## CASE v. BANK.

A., in order to secure the payment of his note to B., pledged to the latter certain shares of the capital stock of a national bank in Louisiana, with authority to sell them in default of such payment. Default having been made, B. sold them, and in March, 1873, applied to the cashier of the bank to have them transferred on its books. That officer refused to allow the transfer, on the ground that A. was indebted to the bank. Before the transfer could be enforced, the bank failed, and C. was appointed a receiver, against whom B., Feb. 24, 1876, brought this action to recover damages for the loss sustained by him. It does not appear that the bank ever adopted any by-law providing for a lien on the shares of a stockholder indebted to it, or that A.'s debt to it had been contracted before his stock was pledged to B. *Held*, 1. That the action is not prescribed by the limitation of one year. 2. That the cashier having been intrusted by the directors of the bank with the transfers of stock, his refusal to permit the transfer was the refusal of the bank. 3. That judgment having been rendered, the court below had power to order C. to pay the claim, or certify it to the comptroller.

ERROR to the Circuit Court of the United States for the District of Louisiana.

This is an action by the Citizens' Bank of Louisiana against Frank F. Case, receiver of the Crescent City National Bank, to recover damages for an alleged refusal on the part of the latter bank to permit a transfer of two hundred and twenty shares of its capital stock.

The petition, which was filed Feb. 24, 1876, alleges, in substance, that the shares were pledged to the Citizens' Bank by Lizardi & Co., to secure the payment of their note to it for $20,000 ; that the act of pledge contained an authority to the Citizens' Bank to sell and transfer the stock, for the purpose of paying said note; that said stock was sold under the act of pledge for $40 per share, but that the Crescent City National Bank refused to permit the transfer thereof on its books, alleging the indebtedness of Lizardi & Co. to it as an excuse for such refusal; that, by such refusal, the sale of said stock was prevented ; and that, before legal steps could be taken to enforce the right of transfer, the Crescent City National Bank failed, causing a loss to the Citizens' Bank of $8,800.

The prayer is, that the receiver be ordered to recognize the Citizens' Bank as a creditor for said sum ; and that he place it

on the next tableaux of distribution for its share of the amount already divided among creditors, and in all future dividends to be distributed.

On the 15th of March, 1876, the receiver filed an exception, setting up two grounds of defence: 1. That the cause of action did not accrue within one year next before the commencement of the action, as appears from the petition filed. 2. That the petition did not disclose a cause of action.

These exceptions having been overruled, he filed an answer reserving them, and denying all the allegations of the petitioner, except his appointment.

A verdict of the jury in favor of the plaintiff below for $4,000, with five per cent interest from March 6, 1873, having been returned, the court rendered judgment "that the Citizens' Bank of Louisiana do have and recover of the Crescent City National Bank, Frank F. Case, receiver, $4,000 and interest, &c.; . . . and that Frank F. Case, receiver, do recognize the said Citizens' Bank of Louisiana as creditor; . . . and that he do pay the same, or certify the same to the comptroller, to be paid in due course of administration; . . . and that the Citizens' Bank of Louisiana do receive, before further payment to creditors, its due proportion of dividends *pro rata* with those already paid to the creditors of the Crescent City National Bank."

The receiver, thereupon, brought the case here.

The remaining facts are set forth in the opinion of the court.

*Mr. J. D. Rouse* and *Mr. William Grant* for the plaintiff in error.

*Mr. A. Pitot* and *Mr. Edward Janin*, contra.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Associations formed under the act to provide a national currency are required to enter into articles of agreement, specifying the object of the association; and the articles may contain other regulations, not inconsistent with the act which the association may see fit to adopt for the conduct of their business and affairs. Such an association may make contracts, sue and be sued, and complain and defend in any court of law or equity

as fully as natural persons. They may also elect directors; and the board of directors may appoint a president, vice-president, cashier, and other officers, and define their duties. 13 Stat. 101; Rev. Stat., sect. 5136; *Knight v. Bank*, 3 Cliff. 429, 431.

Sufficient appears to show that the plaintiff bank discounted for the firm named in the transcript their promissory note, in the sum of $20,000, payable to the order of the bank in thirty days; and that the promisors, to insure the payment of the note, pledged to the holders two hundred and twenty shares of the capital stock of the bank of which the defendant is the receiver, — part standing in the name of the debtor firm, and part in the name of their senior partner. Authority was given to the pledgees, at the time the stock was pledged, in case the note was not paid at maturity, to sell the shares pledged at public or private sale, the pledgors agreeing to sign all required transfers of the same necessary in the premises.

Payment of the note, when it fell due, was refused; and the pledgees of the stock, having found purchasers for the same at the rate specified in the declaration, requested the bank of which the defendant is the receiver for permission to transfer the stock to the purchasers of the same; and the charge is that the bank peremptorily refused the request, on the ground that the promisors of the note were indebted to the bank, and that their stock could not be transferred before payment of their indebtedness.

Nothing appears to show when the indebtedness of the pledgors of the stock was contracted to the defendant bank; but it is not alleged that it preceded the pledge of the stock, nor is it claimed that the defendant bank had any lien on the stock for the payment of the alleged indebtedness.

Process was served, and the defendant bank appeared and filed a peremptory exception to the declaration: 1. Because the supposed cause of action did not accrue within one year next before the commencement of the suit. 2. Because the petition or declaration does not disclose any cause of action against the defendant.

Hearing was had, and the court overruled the exception. Proceedings now unimportant followed, when defendant again

appeared and filed an answer, denying all the material allegations of the petition. Issue being joined, the parties went to trial, and the verdict and judgment were in favor of the plaintiff; and the defendant excepted, and sued out the present writ of error.

Since the cause was entered here, errors have been assigned to the effect following: 1. That the Circuit Court erred in holding and instructing the jury that the action rose *ex contractu*, and that it was not prescribed by one year. 2. That the Circuit Court erred in instructing the jury that the defendant was liable for the refusal of the cashier to permit the stock to be transferred. 3. That the Circuit Court erred in refusing the two prayers for instruction presented by the defendant. 4. That the Circuit Court erred in ordering the receiver to pay the amount of the judgment or to certify the same to the comptroller.

By-laws were adopted by the defendant bank, which provide that the stock of the bank shall be assignable only on the books of the bank, subject to the provisions and restrictions of the act of Congress, and that a transfer-book shall be kept, in which all the assignments of stock shall be made. Certificates of stock signed by the president and cashier may, as the by-laws provide, be issued to stockholders; but the requirement is, that the certificate shall state upon the face thereof that the stock is transferable only upon the books of the bank, — the further requirement being that, when stock is transferred, the existing certificates shall be cancelled and returned, and that new ones shall be issued.

Provision is made by the code of the State that persons are responsible for the damage they occasion, not merely by their acts but by their negligence, their imprudence, and their want of skill, which is not different in its application to this case from the rule which prevails at common law. Rev. Code La., arts. 2315, 2316.

Whenever an agent violates his duties or obligation to his principal, and loss ensues to the principal, he is responsible therefor, says Judge Story, and is bound to make a full indemnity. Story, Agency (6th ed.), sect. 217 *a.*

Actions for injurious words, whether verbal or written, and

those for damages caused by animals, or resulting from offences, or *quasi* offences, are prescribed by one year in the jurisprudence of the State. Rev. Code La., sect. 3536. And the first proposition of the defendant is that the Circuit Court erred in holding that the action in this case was not barred by that article of the code.

Causes of action resulting from offences or *quasi* offences are barred by the lapse of one year, and the defendant bank contends that the cause of action set forth in the petition in this case falls within the one or the other of those designations. Argument to show that it was not an offence is certainly unnecessary, as the proposition if made would be wholly without merit, from which it follows that the theory must be wholly rejected, unless the act for which the damages are claimed in this case can properly be regarded as a *quasi* offence within the meaning of that provision.

Even suppose the terms of the provision apply to such a cause of action, it is by no means certain that the admission, if made, would benefit the defendant, as the Supreme Court of the State has decided that prescription in respect to a promissory note is interrupted so long as the holder is in possession of collaterals pledged by the maker to secure its payment. *Blanc* v. *Hertzog*, 23 La. An. 199.

Stocks pledged as security for a loan, the same court holds, constitute a standing acknowledgment of the debt which interrupts prescription during the time the securities pledged remain in the possession of the creditor. *Police Jury* v. *Duralde*, 22 id. 107; *Citizens' Bank* v. *Knapp*, id. 117.

Suppose, however, the claim for damages resulting from the refusal of the bank to transfer the stock must be considered as a cause of action wholly distinct from the note and the collaterals, then it becomes necessary to examine the objections taken by the plaintiff bank to the validity of the defence of prescription. Coming to that defence the plaintiff bank contends that the cause of action does not fall within the rule of prescription by the lapse of a year, because the act which gives rise to the claim was neither an offence nor a *quasi* offence within the meaning of that article of the Revised Code. Precisely the same question was presented to the Supreme Court

of the State and was decided by that court adversely to the views of the defendant.  *Campbell* v. *Miltenberger*, 26 id. 72.

Compensation was claimed by the plaintiff in that case for damages occasioned by the defective and improper construction of a fence around his dwelling and premises by the defendant. The prescription of one year was pleaded, setting up the same article of the code, but the court decided that the rule of prescription of one year only applied to cases arising from damages caused by the commission of an offence or *quasi* offence, and overruled the defence as inapplicable to the case.

Actions arising under the article referred to survive, in case of the death of the injured party, for the space of one year, in favor of the minor children and widow of the deceased.  Rev. Code, art. 2315.

Personal actions are not in general prescribed in that State short of ten years, even when the creditor is present, nor short of twenty years if he be absent.  Id., art. 3544.

Many decisions have been made in the State upon the subject, but a few of each of the classes in question will be sufficient to show that the act which gave rise to the cause of action in this case cannot be regarded either as an offence or *quasi* offence within the rules of decision adopted in that State.

Wilful trespass in cutting wood upon another man's land and refusing to account for the same when accused of the act was held to be prescribed by that provision.  *Whitehead* v. *Dugan*, 25 La. An. 409.

Where damages were claimed for the illegal and wrongful seizure of the defendant's property by virtue of an execution against another party, whereby much of the property was lost or destroyed, it was held that the claim for damages fell within the category of that rule.  *De Lizarde* v. *The New Orleans Canal and Banking Co.*, 25 id. 414.

Claim for injuries occasioned by a railroad to individuals, or for the destruction of domestic animals, are held to fall within the same category as charges of *quasi* offences.  But the right to recover of a banker for failure to protest a note, whereby the indorser is charged, is only prescribed by ten years.  *Eichelberger* v. *Pike*, 22 id. 142; Rev. Code, 3544.

So an action against a telegraph company for loss on goods by a mistake in the message may be maintained unless prescribed by ten years. *La Grange* v. *Southwestern Telegraph Co.*, 25 La. An. 383.

Cases in great number of a like character might be cited, but it must suffice to refer to one other, which seems to be decisive of the point. *Percy* v. *White*, 7 Rob. (La.) 513. It was an action by the stockholders against the directors to recover damages for losses sustained through their negligence, fraud, and mismanagement, and the court held that it was not prescribed short of ten years from the acts which were the subject of complaint. Such a case every one must admit is much stronger than the case at bar, as the directors were directly charged as wrong-doers, and as guilty of negligence, fraud, and mismanagement in the performance of their official duties.

Opposed to that the defendant refers to the case of *Taylor* v. *Graham*, as being inconsistent with the prior case, but the court is not inclined to adopt that view, as the notary is a public officer and the charge against him was that of gross negligence in the performance of his official duty. *Taylor & Raddin* v. *Graham*, 15 La. An. 418.

Promptitude and fidelity are expected of notaries in giving notice of protest in all jurisdictions where that duty is required of those officers, and it cannot be doubted that the court regarded the charge as imputing a *quasi* offence. In the case at bar the demand of transfer was made by the plaintiff bank in behalf of the purchaser of the stock, and the cashier answered that by order of the directors he could not allow the transfer, as the holder of the certificates was indebted to the bank. Instructions from the directors were obligatory upon the cashier, who in point of fact assumed no responsibility. He acted by order of the directors, who for that purpose constituted the bank, it appearing that he merely obeyed their instructions not to transfer any stock whose owner had discounted notes in the bank unpaid.

Evidence was introduced by the plaintiffs tending to show that the cashier of the defendant bank was the officer intrusted by the directors with the transfer of stock, and they also gave

in evidence the note secured by the pledge of the stock, but they gave no other evidence to show that the note was due and unpaid, or that any effort had been made to collect the same of the maker, or that the maker was insolvent, nor was any evidence introduced to show that any thing had occurred to interrupt or suspend prescription.

Both parties having closed, the defendant bank requested the court to instruct the jury that the defendant is not liable for the refusal of its cashier or other officer to transfer the stock, unless he acted in the premises under the authority of the charter or by-laws of the bank, or pursuant to some general or special authority derived from the corporation through its board of directors, but the court refused to give the requested instruction, and instructed the jury that if they found that a person representing the plaintiff, having in his possession the certificates of the stock, sent to the defendant bank during the ordinary hours of business and found there the cashier, and that he was the officer customarily intrusted by the directors to make such transfer of stock, and that he, the person having the certificates, demanded the transfer of the cashier, at the same time offering to deliver up the old certificates, and that the cashier refused to allow the transfer, upon the ground that the owner was indebted to the defendant bank, that such a refusal was a refusal of the bank.

Compare the instruction given with that requested, and it will be seen that the introductory part of the request is fully given in the instruction given to the jury. They were told that if they found that a person representing the plaintiff, having the certificates of the shares in his possession, went to defendant bank and there found the cashier, and that he was the officer customarily intrusted by the directors to make the transfers, which was fully equivalent to the request, though stated in the affirmative and not in the negative form. Unless the jury found all those facts to be true, they were not authorized to find a verdict for the plaintiff; and, inasmuch as the verdict returned was in favor of the plaintiff, it must be assumed by the Appellate Court that the entire theory of fact involved in the instruction is proved.

Suppose that is so, then it is plain that the whole instruction

is correct, as it is not controverted that the demand was regularly made, nor that the cashier refused to allow the transfer.

Cashiers of a bank are held out to the public as having authority to act according to the general usage, practice, and course of business conducted by such institutions; and their acts, within the scope of such usage, practice, and course of business, will in general bind the bank in favor of third persons " possessing no other knowledge." *Minor* ·v. *Mechanics' Bank of Alexandria*, 1 Pet. 46.

Neither the public at large nor third persons usually have any other knowledge of the powers of a cashier than what is derived from such usage, practice, and course of business; and it would be the height of injustice to hold that the bank as the principal to the cashier may set up their secret and private instructions to the officer, limiting his authority in respect to a particular case, and thus to defeat his acts and transactions as such agent, when the party dealing with him had not and could not have any notice of the secret instructions. Story, Agency (6th ed.), sect. 127.

Such an officer is *virtute officii* intrusted with the notes, securities, and other funds of the bank, and is held out to the world by the bank as its general agent for the transaction, of its affairs, within the scope of authority, evidenced by such usage, practice, and course of business.

Where the by-laws of a bank require that the transfer of the shares of the capital stock shall be entered in the books of the bank, the entry is usually made by the cashier, and the evidence introduced by the plaintiff tended to show that the practice of the defendant bank was in accordance with the general usage. Evidence to that effect having been introduced, it was certainly competent for the court to submit it to the jury, and the judge might have instructed them that, in view of that evidence, they would be warranted, if they believed the testimony, in finding that the cashier had the authority to make the transfer. *Wild* v. *Bank*, 3 Mas. 505.

Official acts may be performed by a cashier which constitute the ordinary and customary functions of such an officer, and persons dealing with the bank are warranted in believing that the cashier is duly authorized to perform any customary duty

falling within the scope of that category, and may to that extent hold the bank responsible, as if he was so authorized, however the fact may be, save only in cases where his want of authority is affirmatively proved, and actual knowledge of that fact is brought home to the third party.

Concede that, and it follows that the cashier, unless the charter or by-laws of the bank forbid it, may properly make or superintend the transfer of shares of the capital stock, and that a person showing a *prima facie* legal right to claim such a transfer to himself may demand it from that officer or any other principal officer left in general charge and superintendence of the bank, during the regular hours appointed by the bank for the transaction of banking business. *Smith* v. *Northampton Bank*, 4 Cush. (Mass.) 1, 11 ; Morse on Banking (3d ed.), pp. 155, 177.

Authorities to show that the acts of a cashier or other officer of a bank, within the scope of the general usage, practice, and course of business of banking institutions, are binding on the corporation in favor of third persons transacting business with it, are quite numerous, provided it appears that the persons dealing with the officer did not know at the time that he was transcending his authority. *Lloyd* v. *The West Branch Bank*, 15 Pa. St. 172 ; *The Bank of Vergennes* v. *Warren*, 7 Hill (N.Y.), 91 ; *Franklin Bank* v. *Steward*, 37 Me. 519, 522.

It may be fairly presumed, says Chancellor Walworth, that the principal officer or clerk in attendance at the bank during the usual hours of business is authorized to permit the transfer of shares when the case presented is one proper to be allowed. *The Commercial Bank of Buffalo* v. *Kortright*, 22 Wend. (N.Y.) 348, 350.

Assumpsit in the form of a special action on the case will lie against a corporation for improperly refusing to make a transfer of shares of capital stock, in the name of the party injured by the refusal. *Kortright* v. *The Commercial Bank of Buffalo*, 20 id. 91 ; Angell & Ames, Corporations (9th ed.), sect. 381.

Enough has already been remarked to show that it is immaterial whether the declaration or petition is regarded as an action *ex contractu* or *ex delicto*, as it is clear that it is not barred by the prescription of one year, so that the point in

any view cannot avail the defendant bank.    *The Pontchartrain Railroad Co.* v. *Heirne,* 2 La. An. 129 ; *Ware* v. *Barataria Co..* 15 La. 169 ; *Etting* v. *The Commercial Bank of New Orleans,* 7 Rob. (La.) 459.

No further remarks are required to show that the refusal of the court to grant the first prayer of the defendant was not error, in view of the instruction given, as that given was quite as favorable to the defendant as the law would allow. Nor is there any just ground of complaint on the part of the defendant that the court refused to give the third request. Instead of giving that, the court instructed the jury that in order to enable the plaintiff to recover, they, the jury, must be satisfied from the evidence that the debt of the owners of the stock was still due and unpaid, and that if that has not been established the jury must find for the defendant.

Comment upon these instructions is needless, as it is clear that the verdict finds that the note is still unpaid.

Exceptions not assigned for error will be passed over without remark as not necessarily re-examinable in this court.

Nothing appears in the case to show that the defendant bank ever adopted any by-law providing for a lien on the shares of a stockholder in case of his indebtedness to the bank, nor is it even shown in this case that the debt, if any, of the owner of the shares to the bank was contracted before the stock was pledged to the plaintiff, nor is there any thing given in evidence by the defendant to show that it was inequitable for the plaintiff to claim the benefit of the collaterals which the bank held to secure the payment of the note they discounted for the owners of the stock.

Beyond all doubt, the validity of their debt is established by the verdict and judgment; and, if so, it requires neither argument nor authorities to show that the order given by the Circuit Court to provide for the payment of the amount recovered was proper and correct.

*Judgment affirmed.*