Oket, J.
Nothing is better settled, than that shares in the capital stock of a corporation are the subject of pledge. A national bank may hold such shares in the capital stock of another national bank, as collateral security for a loan or loans made or to be made. National Bank v. Case, 99 U. S. 628. Moreover, an objection to such transaction could not be made in this action. Where, as in this case, the pledgor executes an irrevocable power of attorney, authorizing a transfer of such shares on the books of the bank issuing the same, the pledgee has the right to demand that such transfer be made. Here, immediately after the note of February 9, 1874, became due, the pledgee applied to the Dayton National Bank to permit such transfer. On refusal of the request, the right to prosecute this action for the value of the stock accrued to the pledgee. Case v. Bank, 100 U. S. 446; Johnston v. Laflin, 103 U. S. 850; and see McAllister v. Kuhn, 96 U. S. 87. True, at the time of such refusal, an assignee in bankruptcy had been appointed for Crump ; but this did not affect the interest of the pledgee in the shares of stock. Jerome v. *216 McCarter, 94 U. S. 734, 739 ; Yeatman v. Savings Institution, 95 U. S. 764. If, however, as said in the latter case, the assignee “ desired a sale of them, and a distribution of the proceeds, or if he doubted the validity of the pledge, he. could have instituted an action against the corporation, in some court of competent jurisdiction, . . . . and thereby obtained a judicial determination of the rights of the parties.” And see Schouler on [Bailments, 232.
We find, in the answer of the Dayton National Bank, a request that Pruden, assignee of Gump, be made a party to the action; but the record does not show that he was made a party on motion of that bank, and, what is of more importance, it does not disclose any objection on the part of the pledgee to such new party. We think the answer and cross-petition of Pruden is, in effect, an equitable action to obtain an account and a sale of the stock, and under the circumstances stated, we must regard such answer and cross-petition as having been filed by consent of the parties.
In such posture of the case, the proper decree was, as this is, that the amount for which the^tock is held as collateral security, should be ascertained; that the Dayton National Bank should pay upon such indebtedness the amount of dividends received by it on the stock, with interest, iess the amount of taxes it has paid on such shares; that the stock should be sold at a public sale; and that the proceeds of the sale should be applied in satisfaction of the balance due the pledgee, and costs and expenses, and if a surplus remained, that it should be paid to the assignee. But the decree should not direct, as this does, that if the stock sells for less than its value at the time the request for transfer was refused, and the proceeds of the sale are insufficient to satisfy the sum due the pledgee, and costs and expenses, then the Dayton [N ational Bank shall pay the pledgee the deficiency, not exceeding the difference between the amount realized from such sale and file sum the stock was worth at the time of such refusal. In such equitable action, the pledgee can only look to the stock and dividends for the satisfaction of its claims. The proposition that it may go further in such action, and recover damages, in *217 any amount, as for a conversion, is supported by no just principle.
We are not prepared to say the finding that the stock was deposited by Gump with the Merchants’ National Bank, to secure the payment of all sums for which he was then or might become liable to that bank, is clearly against the weight of evidence—certainly we cannot say such finding is so against the evidence as to call for a reversal of the judgment in that respect. Clearly the pledge was made to secure the repayment of $1,500. Perhaps there is sufiicient support in the evidence for the finding that the stock was not only pledged to secure the repayment of $1,500 to be thereafter advanced, but also as collateral security for the other sums for which Gump was liable, and then due to the bank, notwithstanding any change that might thereafter be made in the form of the indebtedness. But, however that may be, the parties in this case cannot be heard to object that property may not be pledged for future advances, as well as for an existing indebtedness ; and where it is taken in pledge for an existing indebtedness, the renewal of a promissory note given as evidence of such indebtedness, will not affect the creditor’s interest in the pledge, in the absence of an agreement to the contrary, but the pledge will stand as security for such balance of indebtedness in its new form.
Nor can we say there was any error with respect to the question made in argument concerning usury in the pledgee’s claims. The matter is not so presented in the record as to call for any interference with the judgment on that ground. Whether, therefore, if the record disclosed the facts concerning usury to be as claimed in argument, any ground of complaint against the judgment in that respect would be available to the plaintiffs in error, we need not determine. See National Bank v. Matthews, 98 U. S. 621; Pullman v. Upton, 96 U. S. 328.
Judgment modified as above.