## F. Y. ROBERTSON v. BUFFALO COUNTY NATIONAL BANK.

### FILED APRIL 17, 1894.   No. 5640.

1. Appeal From Inferior Courts: ISSUES IN APPELLATE COURT. A case should be tried in an appellate court on the same issues on which it was tried in the court below; but an objection to the variance in the issues should be made of record in the case, by motion or otherwise, before the commencement of the trial; and if not so made, such objection will be waived.

2. Banks and Banking: PRESIDENT'S CONTRACTS: SUBSCRIPTION: DONATIONS. No agent of a corporation has the implied authority to give away any portion of the corporate property or to create a gratuitous corporate obligation binding on the corporation; accordingly, where the president of a national bank signed its name to a subscription paper obligating the bank to donate two hundred dollars to certain parties on condition that they would erect a paper mill in the city of K, held, (1) that the making of donations of its funds to aid in the building of a paper mill was no part of the business for which the bank was incorporated; (2) that the act of the president was not within the scope of his authority, and that the bank, in the absence of an authorization or ratification by it of the president's act, was not bound by the agreement made.

ERROR from the district court of Buffalo county. Tried below before HOLCOMB, J.

*Dryden & Main* and *Calkins & Pratt,* for plaintiff in
error:

The defense of *ultra vires* is a special defense, which can
only be raised when pleaded, and the action having been
tried in the justice court upon general denial, under which
the plea of *ultra vires* could not be raised, there was error
in the action of the district court in permitting an amended
answer to be filed raising this question. (Bliss, Code Plead-
ing [2d ed.], sec. 352; *Carr v. Luscher,* 35 Neb., 318;
*First Nat. Bank of Madison v. Carson,* 30 Neb., 104.)

The plaintiff's assignors, relying upon the subscription
of the defendant, with others, invested thirty thousand
dollars in the city of Kearney.   The defendant received
all the benefits from the subscription which it bargained for
and should not now be heard to say that it had no author-
ity to make the contract set out in the plaintiff's petition.
(*Rich v. State Nat. Bank of Lincoln,* 7 Neb., 201; Beach,
Private Corporations, sec. 424, ch. 22; *Whitney Arms Co.
v. Barlow,* 63 N. Y., 68; *Dewey v. Toledo, A. A. & N. M.
R. Co.,* 51 N. W. Rep. [Mich.], 1063; *Sherman Center
Town Co. v. Russell,* 26 Pac. Rep. [Kan.], 715; *Whetstone
v. Ottawa University,* 13 Kan., 320; *State Board of Agri-
culture v. Citizens Street R. Co.,* 17 Am. Rep. [Ind.], 702;
*Hitchcock v. City of Galveston,* 96 U. S., 341.)

*R. A. Moore* and *Hamer, Sinclair & Brown, contra:*

The first alleged error complained of by the plaintiff in
error in his brief is that the court permitted the defendant
to set up the defense of *ultra vires* for the first time in the
appellate court.   There is no suggestion in the motion for a
new trial that the court erred in this respect, which is neces-
sary before it can be urged in this court. (*Midland P. R.
Co. v. McCartney,* 1 Neb., 398; *Mills v. Miller,* 2 Neb.,
299; *Cropsey v. Wiggenhorn,* 3 Neb., 108; *Hull v. Miller,*
6 Neb., 128; *Cruts v. Wray,* 19 Neb., 581.)

He who deals with a corporation is chargeable with notice of its powers and the purposes for which it was formed; and when dealing with its agents or officers, is bound to know the extent of their powers and authority. (*Jemison v. Citizens Savings Bank*, 122 N. Y., 135, *Alexander v. Cauldwell*, 83 N. Y., 480; *Relfe v Rundle*, 103 U. S., 222; *Davis v. Old Colony R. R. Co.*, 131 Mass., 258; *Leonard v. American Ins. Co.*, 97 Ind., 299; *Franklin Company v. Lewiston Institution for Savings*, 68 Me., 43.)

The bank made no contract of subscription, for the reason that no one was authorized to make such a contract for it. (*Hodges v. First Nat. Bank of Richmond*, 22 Gratt. [Va.], 51; Ball, National Banks, p 60; *United States v. City Bank of Columbus*, 21 How. [U. S.], 356; *Rich v. State Nat. Bank of Lincoln*, 7 Neb., 206.)

The contract is not within the scope of the corporate powers of a national bank organized under the national banking act. (*Wiley v. First Nat. Bank of Brattleboro*, 47 Vt., 546; *First Nat. Bank of Lyons v. Ocean Nat. Bank*, 60 N. Y., 278, *Weckler v. First Nat. Bank of Hagerstown*, 42 Md., 581; *Bank of the United States v. Dandridge*, 12 Wheat. [U. S.], 68.) This proposition cannot be denied, and, unless it would defeat justice or accomplish a legal wrong, it is a good defense. (*Jemison v. Citizens Savings Bank*, 122 N. Y., 135; *Huntington v. Savings Bank*, 96 U. S., 388; *Thomas v. West Jersey R. Co.*, 101 U. S., 71; *Nassau Bank v. Jones*, 95 N. Y., 115; *Miner's Ditch Co. v. Zellerbach*, 37 Cal., 543; *Bissell v. Michigan, S. & N. I. R. Co.*, 22 N. Y., 258.)

RAGAN, C.

On the 8th of January, 1889, the president of the Buffalo County National Bank signed its name to a subscription paper, by which the signers of said paper agreed to donate and pay to one Johnson and others the sums of

money set opposite the respective names of said signers
when said donees should have on the grounds $20,000
worth of paper mill machinery for the purpose of erecting
in Kearney, Nebraska, a paper mill. The amount sub-
scribed by the bank was $200. On August 15, 1889,
Johnson and the other donees mentioned in said subscrip-
tion paper brought suit before a justice of the peace against
the bank on said subscription and by the consideration of
said justice obtained a judgment. The bank appealed to
the district court, where F. Y. Robertson was substituted
as plaintiff. At the conclusion of the trial the jury, in
obedience to an instruction of the court, returned a verdict
in favor of the bank. Robertson's motion for a new trial
was overruled and he brings the case here for review.

There are two assignments of error argued by Robert-
son's counsel in their briefs in this court. The first is that
the court permitted the bank to file an answer in the dis-
trict court setting up the defense of *ultra vires* for the first
time in the history of the case. It appears from the rec-
ord that the case was tried before the justice of the peace
on the bill of particulars of plaintiff and an answer of the
bank consisting of a general denial. When the case reached
the district court the donees filed their petition against the
bank, alleging that it was a banking corporation organized
under the act of congress; that it had signed the subscrip-
tion paper agreeing to pay the plaintiffs $200 when they
should have $2,000 worth of machinery on the grounds
ready for the erection of a paper mill; and that the plaint-
iffs had complied with their part of the contract. The
bank answered two defenses: First, a general denial; and,
second, that the bank was a national bank organizied for
the purpose of lending money and receiving deposits, and
that the signing of subscription papers like the one in suit
was not a part of the business of the bank, and that the
same was never signed, or authorized to be signed, by the
board of directors of said bank, and that it was not liable

thereon.   The petition of the donees was filed in the district court on the 18th of December, 1889, and nothing further appears to have been done in the case until April 4, 1891, when Robertson, on motion, was substituted as plaintiff in the action, and on the same day leave was given the bank to file an answer *instanter*.   The bank complied with this leave by filing the answer mentioned above on the 26th day of January, 1892, and on the 27th day of January, 1892, Robertson filed a reply consisting of a general denial.

So far as the record shows the attention of the court was never called to the fact that the bank's answer in the district court set up a different defense from the answer it filed in the justice's court.   Robertson at no time filed a motion to strike out the defense of which he complains in the bank's answer.   He made no objection in any manner or form to this defense previous to the trial, nor at the time of the trial.   If the defense interposed by the defendant was a different one from that interposed by it in the justice court, Robertson, if he desired to object to trying the case on the issues as made by the bank's answer in the district court, should have moved to strike out of such answer all the defenses therein, except that of a general denial, before the case came on for trial to the jury; but having replied to the answer of the bank, and having made no effort to strike out of the bank's answer the defenses not interposed before the justice of the peace, it was too late for him, after the trial commenced, to raise the objection for the first time that the issues in the district court were different from those in the justice court.  "Where a cause is appealed from a county court the case should be tried in the district court upon the same issues that were presented to the lower court. If the appellee goes to trial in the appellate court without objection, upon new issues, it is a waiver of the error." (*First Nat. Bank of Madison v. Carson*, 30 Neb., 104.)  It remains to be said of this assignment of error, however,

that Robertson did not raise it either in his motion for a new trial or in the petition in error filed in this court.

The next error assigned here and argued in the briefs of counsel is that the court below erred in instructing the jury to return a verdict for the bank. The undisputed evidence in the case is that the president of the bank, without the knowledge or consent of the directory, signed the name of the bank to the subscription paper, and that the directory of the bank had never ratified this act of the president. Whether the court erred in instructing the jury to return a verdict for the bank depends, then, upon the question as to whether the bank is bound by the subscription made by its president. This bank was organized under the act of congress for the purpose of lending money, receiving deposits, and for the conducting of a general banking business. The making of donations of its funds or capital to aid in the building of paper mills, canals, or churches is no part of the business for which it was incorporated. The bank, that is, the corporation, by the unanimous consent of its stockholders, might, no doubt, make such donation of its capital to any enterprise or person it chose; but is the bank bound by a contract made in its name by its president, in and by which it is agreed to donate to some person or enterprise a part of its capital?

A large part of the argument of the counsel in this court has been directed to the doctrine of *ultra vires*, but we do not think that it is necessary to invoke that doctrine in order to reach a correct decision in this case. It seems to us that the question is one of agency. The bank is the principal and the president of the bank was its agent, and the bank, of course, was bound by the acts of its president done within the scope of his authority. In Morawetz, Private Corporations, section 423, it is said: "The property and funds of a corporation belong to its shareholders and cannot be devoted to any use which is not in accordance with their chartered purposes, except by unanimous

consent.  No agent of a corporation has implied authority to give away any portion of the corporate property or to create a corporate obligation gratuitously."  In *Jones v. Morrison*, 31 Minn., 140, it is said: "The directors of a corporation have no authority to appropriate its funds in paying claims which the corporation is under no legal or moral obligation to pay; as to pay for past services which have been rendered and paid for at a fixed salary previously agreed on; or under a previous agreement that there should be no compensation for them." To the same effect see *Salem Bank v. Gloucester Bank*, 17 Mass., 29; *Bissell v. City of Kankakee*, 64 Ill., 249; *Minor v. Mechanics Bank*, 1 Pet. [U. S.], 44; *Case v. Citizens Bank*, 100 U. S., 446.

In *Alexander v. Cauldwell*, 83 N. Y., 480, it is said: "One who deals with the officers or agents of a corporation is bound to know their powers and and the extent of their authority; the corporation is only bound by their acts and contracts which are within the scope of their authority." In *Rich v. State Nat. Bank*, 7 Neb., 201, it is said in the syllabus: "No officer of a bank can bind it by a promise to pay a debt which the corporation does not owe and was not liable to pay, unless the bank authorizes or has ratified the act; but ratification is equivalent to original authority to act in the matter, and corporations are bound in the same manner as natural persons."

We think these authorities are decisive of the case at bar.  This is not a case in which the bank has received and retains the fruits of an unauthorized contract made by its agent.  The contract sought to be enforced here was one by which the president agreed that the bank would donate a part of its capital to the assignor of the plaintiff in error. If this bank can be bound by the agreement of its president to donate $200 to an individual to aid him in building a paper mill, then the bank can be bound by the agreement of its president to donate its entire capital.  Such a rule as this would confer upon the agent of a corporation greater

powers than that possessed by its directory.   The judgment
of the district court is

AFFIRMED.