ALFRED WATKYNS SEYMOUR, as Administrator with the Will Annexed of the Goods, Chattels and Credits of THOMAS WILLIAMS, Deceased, Plaintiff, *v.* THE MECHANICS AND METALS NATIONAL BANK OF THE CITY OF NEW YORK, Defendant.

Supreme Court, New York Special Term, December, 1922 (Received June, 1923).

**Corporations — suit to establish right to shares of stock in bank — when receipt for shares issued in 1823 insufficient to establish cause of action — evidence — custom as to surrender of certificates — lists of stockholders — power of cashier to issue certificate.**

The charter of a bank incorporated by chapter 87 of the Laws of 1810, while it required that books for the registry of transfers of shares of its stock should be kept, contained no provision for the issuance of stock certificates, nor was there such a provision in force in 1823, when the bank issued a certificate reading as follows:

" This is to certify, that sixty-seven shares in the capital stock of the Mechanics Bank in the City of New York are this day standing in the name of Archibald Cornell, acting executor of the estate of Thomas Williams, deceased, on the books of the company.

" NEW YORK, 19th of *August*, 1823.

" 67 shares.    JNO. FLEMING, *cashier*."

In 1852 said executor died without having filed an inventory, and without having accounted in such representative capacity, and neither his estate nor that of his testator has ever been fully administered. In the latter part of 1913 or the fore part of 1914 the said certificate of stock was found among a lot of old papers that had been handed down in the family of the deceased executor, and after examination it was turned over to a lawyer, and upon the claim that said certificate was an unadministered asset of the estate, the administrator with the will annexed of said Thomas Williams, by an amended complaint alleging all material facts, prayed that the defendant, a successor of the bank which issued said certificates, be required to transfer on its books the said sixty-seven shares of stock upon surrender of the certificate, and to issue therefor to plaintiff a certificate for such number of shares of its stock as were truly represented by the certificate in suit, and requiring the defendant to account for all dividends accrued and unpaid on said shares of stock, and their equivalent, respectively, from August 19, 1823, to the present time. The answer of defendant admitted the consolidation and merger of the original bank and its successors with various other banks, as alleged in the complaint, and also plaintiff's demand for the transfer to him of stock in the defendant and payment of dividends, but put in issue all other material allegations of the complaint, and pleaded the six, ten and twenty-year Statute of Limitations as a defense both in respect of the stock and dividends, besides three separate defenses. *Held*, that the certificate of stock in suit by its form had no greater effect and no further function than a mere receipt, good as of the date of its issue, and it having been established on the trial that all of the capital stock of the original bank was issued and outstanding in the names of others, and so remained from some time prior to the year 1837 until after the death of the executor of the Williams estate, that during that time the stockholders of record were recognized as the lawful owners of all of the capital stock and dividends thereon were paid to them, and that the

records of the bank did not show that any of the stock was standing in the name of the executor and that no dividend was paid to him, the defendant was entitled to judgment for the dismissal of the complaint upon the merits, with costs.

The reception in evidence over plaintiff's objection and exception of an alleged custom respecting the transfer of stock by certain banking institutions, including the original bank, without the surrender of the original certificate, was proper, and a motion to strike out such evidence, renewed at the close of the whole case, will be denied.

It appeared from a list of the names of the holders of the stock of the original bank, dated August 1, 1823, and filed in the state comptroller's office on the same day, that sixty-seven *shares of such stock stood in the name of the* deceased executor of the Williams estate. *Held,* that the accidental destruction of the original bank's transfer books and stock transfer ledgers, in 1912, having been fully and satisfactorily explained, the admission in evidence, over plaintiff's objection and exception, of certain dividend books covering the period from February, 1837, to 1846, and from 1851 to 1854, respectively, upon which the name of the deceased executor did not appear, was justified in support of defendant's claim that said executor ceased to own any shares in the original bank at some time prior to 1837, under the rule that when primary evidence is gone, resort may be had to what good fortune enables you to lay hold of as a substitute, and a motion to strike out such evidence will be denied.

In considering the question whether the cashier of the original bank had authority to issue the certificate of stock in suit, it was to be borne in mind that a certificate of stock is not the stock itself, but merely representative thereof and evidence of title thereto, and that in the absence of any provision of law or by-law it is not essential that such a certificate shall issue in order to create the relation and confer all the rights and impose all the liabilities of a stockholder.

THE nature of the action and the facts, so far as they are material, are stated in the opinion.

*Wellman, Smyth & Scofield (Herbert C. Smyth, Elijah N. Zoline* and *Roderic Wellman,* of counsel), for plaintiff.

*Frank M. Patterson (Clarence J, Shearn, Frank M. Patterson* and *Mervyn Mackensie,* of counsel), for defendant.

GIEGERICH, J.   The action is to require the defendant to transfer on its books to the plaintiff a certificate of such number of shares of its capital stock as are truly represented by a certificate for sixty-seven shares of the Mechanics Bank, the defendant's predecessor, dated August 19, 1823, issued in the name of Archibald Cornell, acting executor of the estate of Thomas Williams, deceased, and also for an accounting for all dividends accrued and unpaid from the date last above mentioned. The amended complaint alleges that on the 8th day of October, 1917, the plaintiff was appointed administrator with the will annexed of the estate of Thomas Williams, who died a resident of the county of New York in the year 1822; that he left a last will and testament which was admitted to probate on the 21st day of November, 1822, and

that one Archibald Cornell qualified as executor thereof; that on the 19th day of August, 1823, a certificate for sixty-seven shares of the capital stock of the Mechanics Bank, a domestic banking corporation, incorporated by chapter 87 of the Laws of 1810, was issued by the bank to Cornell, as such executor; that on or about January 26, 1852, Cornell died, without having filed an inventory and without having accounted as executor, and that neither his estate nor the testator's estate has ever been fully administered, and that the said certificate still remains an unadministered asset of the estate of Williams.   The amended complaint further alleges that the charter of the said bank, as extended, expired on January 1, 1855, and that on the same day the Mechanics Bank of the City of New York was incorporated under the laws of this state and acquired the business and property of the former bank, and that under the plan of acquisition the stockholders of the original bank became entitled to certain shares in the new bank in the place and stead of their stock in the original bank. There are also allegations of consolidations and mergers of the Mechanics Bank of the City of New York and its successors with various other banks, and it is further alleged that in the case of each consolidation and merger the stockholders of the former institutions became entitled to stock in the new institution.   It is also alleged that no stock of any of the successor banks was ever issued in the place and stead of the stock belonging to the Williams estate, although it is claimed it became the rightful owner of an equivalent proportion of the stock of the defendant.   It is further alleged that from the said 19th day of August, 1823, down to the present time dividends were paid by the defendant and its various predecessors, but that at no time has any of them paid any dividends on said certificate of stock to the Williams estate or to the plaintiff; that on or about November 5, 1907, the plaintiff duly tendered the said certificate of stock to the defendant for transfer, and demanded that it issue to him a certificate of such number of shares of the defendant as are truly represented by the said certificate, and that on the same day plaintiff demanded that the defendant account to him for all dividends accrued and unpaid upon the shares of stock of each one of the banks, " which were and are the property of the said estate," and that each of the said demands was refused.   The relief prayed for is that the defendant be required to transfer on its books the said sixty-seven shares of stock upon surrender of the said certificate, and to issue therefor to the plaintiff a certificate for such number of shares of its stock as are truly represented thereby, and requiring the defendant to account for all dividends accrued and unpaid on said shares of

stock and their equivalent in said banks, respectively, from the said 19th day of August, 1823, to the present time. The answer admits the fact of the various mergers and consolidations set forth in the amended complaint and the demand made upon it in behalf of the plaintiff for the transfer to him of stock in the defendant, and payment of dividends, and it puts in issue all other material allegations of the amended complaint. In addition it pleads the six, ten and twenty-year Statute of Limitations, both in respect to the stock and the dividends, and further alleges as three separate defenses that if any of the stock in the original bank was ever issued to the Williams estate, it was transferred by the estate to some other person prior to the year 1837, and that in that year all of the stock of the original bank was issued and outstanding, and none of it then or since stood in the name of the Williams estate, and that these facts were known or should have been known to the executor, and on these facts it reasserts the pleas of the six, ten and twenty-year Statutes of Limitations. It is then alleged as a seventh separate defense that the capital stock of the original bank was issued and transferred as provided by law, and that if at any time any of it was owned by the Williams estate it was transferred by it prior to 1837, and in that year all of it was outstanding in the name of others, and ever thereafter so remained; that the records of the original bank as to stockholders prior to the year 1837 have been lost, and the defendant has been unable to obtain any information in regard to the stockholders prior thereto; that those interested in the Williams estate were aware of the fact that no such shares stood on the records of the bank in the name of the estate in 1837 or subsequent thereto; that no dividends were paid to the Williams estate, and that since 1837 none of the banks had any notice of a claim that the estate held stock in the original bank or was entitled to dividends thereon, and, therefore, the estate is barred by laches from asserting any right to dividends or as a stockholder. It is further alleged in furtherance of such separate defense that if the transfer of the stock was made without the authority of the executor, and his successor or successors, and those interested in and entitled to share in the estate, it was due to his and their gross negligence. The first amended reply put in issue the allegations contained in the seventh separate defense of the answer, and set up avoidances to these various defenses, and the defendant interposed a demurrer challenging the legal sufficiency of six of the nine avoidances. The issues of law raised by such demurrer were brought on before me for argument as a contested motion, and the motion to overrule the demurrers to the avoidances was denied, with leave to renew. 108 Misc. Rep.

138. The plaintiff then served a second amended reply. With the exception of an added allegation to the effect that by reason of the vesting of the property of the original bank in the directors of the successor banks for the benefit of its stockholders, an express trust was created, it is the same as the first amended reply. The defendant thereupon demurred to the avoidances and partial avoidances set up in the second amended reply and moved to have such demurrer sustained. The motion was denied by Mr. Justice Wagner, and such determination was affirmed on appeal. 199 App. Div. 707. It appears from the evidence that in the latter part of 1913 or the first part of 1914, the certificate of stock was turned over, with a lot of old papers, by a grandson of Cornell to a genealogist, who at the time was tracing the genealogy of the Cornell family. The papers in question had been handed down in the family and had been kept in a so-called " secretary " or large bookcase and desk. After examination the certificate was subsequently turned over to an attorney at law, and this action was then brought thereon. The certificate reads as follows:

" This is to certify, that sixty-seven shares in the capital stock of the Mechanics Bank in the City of New York are this day standing in the name of Archibald Cornell, acting executor of the estate of Thomas Williams, deceased, on the books of the company.

" New York, 19th of *August*, 1823.

      " 67 shares    Jno Fleming, *cashier.*"

The defendant claims that such certificate had no probative force subsequent to its date. Attention is called by the defendant both to the form of the certificate and to its informality. It does not bear the seal of the bank nor does it mention the corporate name of the bank. In further support of the point so raised the argument is advanced that the certificate contains no provision as to the method of transfer of stock nor is the certificate required to be surrendered as a prerequisite to the transfer of the shares of stock; that from its very terms the certificate was not, and was not intended to be, negotiable; that it is confined by its terms to the date of its issue, and certifies only to the state of affairs on that day, and puts any person dealing with the holder of the certificate at a later date upon inquiry to ascertain what shares the holder was entitled to at the date of any attempted transfer, and that, coupled with the provision of the statute incorporating the bank, which provided that the shares were transferable only upon the books of the bank, it is manifest that the certificate by its form had no greater effect and had no other function than a receipt, good as of the date of its issue. The plaintiff, on the

other hand, contends that Fleming, as cashier, had full power to issue the certificate in question, and that it contains all the essentials of a genuine and valid certificate. While counsel for the defendant admitted of record upon the trial that the signature of Fleming to the certificate was genuine, and that he was at the time the cashier of the Mechanics Bank, he expressly stated that he did not concede that Fleming had any authority whatever to issue such certificate. The authorities cited by the plaintiff's counsel (*Caldwell* v. *National Mohawk Valley Bank*, 64 Barb. 333; *Case* v. *Bank*, 100 U. S. 446, 455; 5 Cyc. 471; *National Bank* v. *Watsontown Bank*, 105 U. S. 217; *City Bank of New Haven* v. *Perkins*, 29 N. Y. 554; *Barnes* v. *Ontario Bank*, 19 id. 152; *Safford* v. *Wickoff*, 4 Hill, 442; *Halstead* v. *Dodge*, 51 N. Y. Super. Ct. 169) do not sustain their position that the cashier had power to issue the certificate. They do not at all touch such question, and none of them, therefore, seem to be applicable to the circumstances of this particular case. In considering the question whether Fleming had the power to issue the certificate of stock it should be borne in mind that the certificate is not the stock itself, but is merely representative thereof and evidence of the title thereto, and that in the absence of any provision of law or by-law it is not essential that a certificate of stock shall have issued to create the relation and confer all the rights and impose all the liabilities of a stockholder. *Zander* v. *N. Y. Security & Trust Co.*, 178 N. Y. 208; *United States Radiator Co.* v. *State of N. Y.*, 208 id. 144; *Thorp* v. *Woodhull*, 1 Sandf. Ch. 411; 14 C. J. §§ 698, 710, pp. 478, 481, 482. As was said in *United States Radiator Co.* v. *State of New York*, *supra*, 149: " The certificate of the corporation for the shares, or the stock certificate, is not necessary to the existence of the shares or their ownership. It is merely the written evidence of those facts. It expresses the contract between the shareholder and the corporation and his co-shareholders." Although required by its charter (Laws of 1810, chap. 87) to keep a book or books for the registry of the transfers of shares of its stock, it nevertheless does not contain any provision whatever for the issuing of certificates of stock. My attention has not been called to any requirement or provision in force when this certificate was issued for the issuance of such certificates, and I am unable after considerable research to find any. It would appear from the evidence that certificates issued by the original bank and other contemporaneous banking institutions similar to the one in suit were not considered in those early days by the banks and their stockholders as anything more than mere receipts, and hence of small moment, and that it was their practice to transfer the stock

on the books of the bank without calling in or requiring the surrender of old certificates or receipts which were then outstanding, and that the method generally used for the transfer of stock was for the shareholders to go to the bank and execute a transfer of their stock. While the defendant's objection that the paper in suit had no binding force and effect as a certificate of stock would thus seem to be well founded, it nevertheless appears from the list of the names of the holders of the stock of the original bank, dated August 1, 1823, and filed in the state comptroller's office on the same day, that sixty-seven shares of such stock stood in Cornell's name as executor. The defendant, however, claims to have established by the evidence that Cornell ceased to own any shares in the original bank at some time prior to 1837. The evidence relied on in support of this point is that the stock books and the stock transfer ledgers were accidentally destroyed in 1912, but the defendant claims it has produced and offered in evidence certain dividend books covering the period from February, 1837, to 1846 and from 1851 to 1854, respectively, and that Cornell's name does not appear upon such books. The plaintiff, on the other hand, claims that the testimony relative to the alleged accidental destruction of the transfer books, including the additional testimony introduced by the defendant, pursuant to the memorandum of April 2, 1923, was wholly unsatisfactory, but after considering all the evidence I am of the opinion that the destruction of such books was fully and satisfactorily explained. The plaintiff objected to the introduction in evidence of the dividend books and now renews the motion to strike out this evidence, because, as claimed, each of the quarterly reports and statements of the original bank for the years 1843 to 1847, being some of the years alleged to be covered by the dividend books, and filed in the state comptroller's office, contain the entry of " unclaimed dividends," which, it is claimed, proves conclusively that there were other stockholders than those listed in the dividend books. It appears, however, upon examination of such quarterly reports that only two of such reports, namely, those showing the condition of business on August 7, 1843, and the 1st day of November, 1843, contain the entry of " unclaimed dividends," while the subsequent reports show the entry of items of " unpaid dividends," which is quite another thing, and denotes that the persons entitled to dividends had not as yet received them. It should be remembered that a long period has elapsed since the certificate sued on was issued and that there is a clear presumption that all the witnesses to the transaction in controversy are dead. The unfortunate destruction of the original bank's transfer books and stock ledgers,

therefore, justifies the admission in evidence of the dividend books under the rule stated in *Northrop* v. *Wright*, 24 Wend. 221, 229: "When the primary evidence is gone, you resort to what good fortune enables you to lay hold of as a substitute. This is often merely circumstantial." The motion to strike out this evidence should, therefore, be denied. The dividend books, so admitted in evidence, give the names of the shareholders, the number of shares each holds and the amount of each dividend payment, and are receipted for by the shareholders, or, in some comparatively few instances, by their respective attorneys. The bank was originally incorporated in 1810 with a capital of $1,500,000, divided into $25 shares. In the following year its capital was increased to $2,000,000, so that this capital divided into $25 shares, called for 80,000 shares. The tabulation in these books shows that each dividend was paid to holders of 80,000 shares. Every share of stock outstanding is thus accounted for, and since Cornell's name does not appear upon these dividend books it may be fairly presumed that prior to 1837 Cornell or the Williams estate had ceased to be a shareholder in the original bank, and that their shares therein were transferred on the books of the original bank in conformity with the requirements of its charter. *Brisbane* v. *Delaware, L. & W. R. R. Co.*, 94 N. Y. 204; *Shaw* v. *Gobel Brewery Co.*, 202 Fed. Rep. 408. As there was not during the period prior to such transfer any requirement or provision for the surrender of a receipt or other evidence of original title as a prerequisite to the transfer of shares on the books of the bank, the possession by the plaintiff of the certificate sued on would seem to be accounted for. It is claimed that Cornell was mentally incapacitated from doing any business during the latter part of his life. The transfer by him of the remaining shares of stock was, however, not made during such period. Moreover, the evidence fails to satisfy me that Cornell was at any time *non compos mentis*. He died on January 22, 1852, and his will, which was executed shortly before his death, shows a thorough grasp of the particulars of his property, which was disposed of in great detail. Furthermore, the evidence also shows that only three years before his death he was still actively engaged in the management of the estate. It is stated in the opinion of the Appellate Division on the appeal before mentioned: "If, as alleged by the defendant, all of the capital stock of the original bank was issued and outstanding in the names of others and so remained from sometime prior to the year 1837 until after the death of the executor of the Williams estate fifteen or more years thereafter, and if, during that time the stockholders of record were recognized as the lawful owners of all of the capital

stock, and dividends thereon were paid to them and the records of the bank did not show that any of the stock was outstanding in the name of the executor, and, as alleged in the complaint, no dividend was paid to him, it would seem that any cause of action on the certificate in behalf of the estate accrued while Cornell was executor, and that the Statute of Limitations ran against the same in his lifetime, and if so, no action can now be maintained on the certificate." *Seymour* v. *Mechanics & Metals National Bank,* 199 App. Div. 707, 713. It would appear that the case has been squarely brought within the scope of such opinion. My conclusion is that there should be judgment for the defendant dismissing the complaint upon the merits, with costs. This view renders it unnecessary to consider the other points urged in the briefs. Leave is given to the parties to submit requests for findings within five days after the publication of this opinion. Evidence was received upon the trial, against the plaintiff's objection and exception, of an alleged custom respecting the transfer of stock by certain banking institutions, including the original bank, without the surrender of the original certificate, and the motion to strike out such evidence is now renewed. After further consideration I think such evidence was properly received, and the motion to strike it out should, therefore, be denied. *Northrop* v. *Wright, supra.* All papers received by me, including the stenographer's minutes, exhibits, briefs and filed papers have been returned to the clerk, to whom all further papers should be handed in, with proof of service.

Judgment accordingly.