# First National Bank of Birmingham *v.* First National Bank of Newport.

*Action to recover Damages for Breach of a Contract of Bailment.*

1. *Banks and banking; receiving papers for collection; liability of bank as bailee.*—Where transfers of land certificates, held as collateral security for a debt, are sent by a creditor to a bank for collection, with instructions to deliver them to the debtor upon the payment of a certain sum, the contract implied from the receipt of the transfers for collection by the bank is that of a lucrative and not a gratuitous bailment, and the bank is, therefore, required to exercise ordinary care for the keeping and preservation of the transfers, until redeemed by the debtor, and to restore them to the creditor on demand, in the event they are not so redeemed; and for ordinary neglect in the performance of this duty, the bank is liable to the creditor from whom the transfers were received.

2. *Action against bank to recover damages for breach of bailment; sufficiency of complaint.*—In an action against a bank to recover damages for the breach of bailment in losing transfers of land certificates, which were held as collateral security for a debt, and which were sent to the bank for collection, with instructions to deliver them to the debtor, upon the payment of a certain sum, and in the event they were not so redeemed to return them to the creditor, a complaint which, after averring the receipt of said transfers by the bank, for the purposes stated, then avers that the defendant grossly neglected its duty to use due diligence to safely keep said transfers, and that the same were lost by it, states a substantial cause of action, and is not demurrable.

3. *Banks; authority of cashier; act done within ordinary business*

[First Nat. Bank of Birmingham v. First Nat. Bank of Newport.]

*binding upon the bank.*—The cashier of a bank is its general executive officer, intrusted with the management of all of its corporate affairs not peculiarly committed to the directors; and any act of the cashier within the scope of the general usage, practice and course of business of the bank, even though his power may be expressly limited by the directors, is binding upon the bank in favor of third persons who did not know that he was acting beyond the scope of the express authority conferred upon him.

4. *Same; same; estoppel.*—The receipt of papers for collection and of the collaterals to secure the payment of such paper, is within the scope of the authority of the cashier of a bank; and where one relying upon the general usage and custom of banks, and having no notice or knowledge of any limitations upon the authority of the cashier of a particular bank, known to be engaged in doing a general banking business, delivers to such cashier, at his regular place of business, a note or bill for collection, together with collaterals given to secure the payment of said note or bill, the bank can not afterwards claim that the act of the cashier in receiving said papers was his individual act, and not that of the bank.

5. *Same; same; receipt of collateral security for collection; estoppel.*— The receipt for collection by a bank, engaged in transacting a general banking business, of papers transferable by indorsement, which, although not of themselves evidence of an indebtedness, show by the indorsements thereon that the persons sending them must hold them as collateral security for an indebtedness, and which are, in fact, held as such collateral security, is within the usage, custom and ordinary course of business of banking institutions, and, therefore, the act of receiving such papers by the cashier of such bank, is within the scope of his authority, and is not his individual act, but that of the bank, in the absence of any knowledge or notice on the part of the sender of any express limitations on the authority of the cashier, with respect to the character of papers which he may receive for collection.

6. *Action against bank for loss of collateral security; sufficiency of plea.* In an action against a bank to recover damages for the loss of transfers of land certificates, which were sent to it for collection by one who held them as collateral security, where the plaintiff claims as damages the expenses which he was put to in prosecuting suits to establish the transfers which were lost, a plea by the bank professing to answer the whole of the complaint, which alleges that the sender of the transfers was negligent in failing to record them, as might have been done by the laws of the State where the lands were situate, and that the incurring of the expenses claimed as damages was rendered necessary only by reason of such negligence, is bad on demurrer in that it does not negative the cause of action, nor present any defense to the whole complaint; since, conceding the truth of the facts alleged in the plea, the plaintiff would still be entitled to recover nominal damages.

7. *Liability of bank for loss of collateral security; insufficient defense.*

[First Nat. Bank of Birmingham v. First Nat. Bank of Newport.]

Where a bank, which, through the want of ordinary care, loses transfers of certificates of land, which were sent to it for the purpose of collecting a sum for which they were given as collateral security, the fact that the person who sent the transfers to the bank failed to have them recorded, as he might have done by the laws of the State where the lands were situate, made it necessary for him to incur expenses in prosecuting suits to establish the lost transfers, is no defense to the recovery of the amount paid by such person in establishing the lost transfers in a suit brought by him against the bank to recover damages for the loss of said transfers.

8. *Action against bank for loss of collateral security; sufficiency of evidence of receipt of papers by bank.*—In an action against a bank to recover damages for the loss of papers, which were sent to it for collection by one who held them as collateral security, where there is evidence that a few days after the sending of such papers the plaintiff received a postal card acknowledging their receipt, that this postal card was a printed form used by the bank to acknowledge the receipt of papers sent to it, that the writing on the card was that of a clerk who had charge of the collection department under the direction and control of the cashier, that at the end of the receipt the name of the cashier was printed instead of written by him, such evidence, in the absence of other evidence tending to show that the cashier did not receive the papers, is sufficient to show that the papers were received by the cashier.

9. *Same; not necessary to prove execution or contents of paper.*—In an action against a bank to recover damages for the loss of transfers of land certificates, which were sent to it for collection by one who held them as collateral security, where the plaintiff claims as damages the expenses he was put to in prosecuting suits to establish the transfers which were lost, it is not necessary for the plaintiff to prove with particularity the execution and contents of the transfers; and upon proof that the plaintiff deposited with the defendant the transfers of the certificates calling for certain quantities of land, that the defendant lost them or failed to restore them upon demand, and that they were afterwards substituted and the land called for procured upon the substitutes, the evidence is sufficient to show the value of the transfers as a security, and to entitle the plaintiff to recover the expenses incurred in substituting them.

10. *Same; burden of proof.*—The loss of a paper by a bank, to which it had been sent for collection, carries with it the presumption of negligence and want of care, and the proof of such loss casts upon the bank the burden of proving facts to rebut the presumption.

11. *Same; measure of damages.*—In an action against a bank to recover damages for the loss of papers which were sent to it for collection by one who held them as collateral security, the damages recoverable is the amount of the value of such papers as a security, not exceeding the amount of the debt secured, if they could not be substituted; and if they were capable of being substituted or restored,

[First Nat. Bank of Birmingham v. First Nat. Bank of Newport.]

the damages recoverable is the amount of the expenses of procuring such substitution, not exceeding their value as security.

12. *Same ; same ; case at bar.*—In an action against a bank to recover damages for loss of transfers of land certificates, which were sent to it for collection by one who held them as collateral security, the plaintiff may recover as damages the expenses incurred in procuring substitutes of the lost transfers, which consisted of legal advice, an investigation of the land office records, a trip to a distant city to obtain a portion of the transfers from the only person able to give them, and the costs, expenses and attorney's fees paid in prosecuting litigation to establish the other portion of such transfers.

13. *Same ; same ; same.*—Where, in such a case, after the plaintiff had established by suit a portion of the transfers which were lost by the defendant, the debtor, who had delivered said transfers to him as collateral security, then executed a mortgage upon the lands called for in such portion of the certificates to secure the debt which the transfers were given to secure, and, thereafter, the plaintiff foreclosed the mortgage, the defendant bank is not liable for the expenses incurred by the plaintiff in foreclosing said mortgage ; such expenses not being the natural and proximate consequences of the failure of the bank to return the transfers, but expenses arising from special and exceptional circumstances which are not recoverable.

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

The appellee, the First National Bank of Newport, Kentucky, brought this action against the First National Bank of Birmingham, Alabama, on August 11, 1892.

The original complaint contained two counts. Subsequently the complaint was amended by adding a third count. The substance of the first and third counts are sufficiently stated in the opinion. The second count sought to recover of defendant the amount claimed in the other counts, as "money paid by the plaintiff for the defendant at its request." The first count was demurred to, the grounds of which are sufficiently shown in the opinion. This demurrer was overruled.

To the complaint as amended, the defendant pleaded the general issue and several special pleas. In the fifth special plea the defendant averred that the plaintiff itself was guilty of negligence in this, "that it failed to have the said land transfers, which, it is alleged in the complaint, were lost by the defendant, recorded in the office of the county clerk of the county in which the lands called for by said transfers were located, as provided by the laws of Texas, as appear from Art. 4330,

Chap. 3, Title 86 of Revised Statutes of Texas of 1879, hereto attached by copy marked exhibit 'A,' or filed in the office of the general land office of the State of Texas, as provided by the laws of the State of Texas, as appears from Art. 3808, Chap. 2, Title 79, of Revised Statutes of Texas of 1879, hereto attached by copy marked exhibit 'B,' and the defendant avers that if the plaintiff had prior to the time it transmitted said land transfers to the defendant, as alleged in the complaint, caused said land transfers to be so recorded or filed, as aforesaid, none of the damages alleged in the complaint to have been suffered by it by reason of the subsequent loss of said land transfers by the defendant would have been suffered by it, and none of the expenses which it is alleged in said complaint were necessarily incurred by it by reason of such loss of said land transfers, would have been necessarily incurred by it."

The seventh special plea was as follows: "7. The defendant for further answer to the third count of the complaint as amended, says that the alleged transfers upon which the plaintiff's cause of action was founded were received by one of its agents and accepted by him; that at the time of the receipt of such transfers by such agent, the defendant was not engaged in the business of receiving or handling land transfers for the purpose alleged in said count, and had not by any act on its part held itself out as being engaged in receiving such land transfers for the purposes therein alleged, and that it had not authorized its agent to receive such land transfers for such purposes, and had no knowledge except that of its land agent prior to the time of the loss of such land transfers that its agent had received said land transfers; and that it did not authorize, acquiesce in or ratify the action of its said agent in so receiving land transfers from the plaintiff therein."

The plaintiff demurred to these pleas. The grounds of demurrer to the fifth plea were as follows: "1. For that the facts alleged in said plea fail to show any negligence on the part of plaintiff, or that such negligence, if shown at all, contributed proximately or otherwise to the want of due care charged against the defendant in the performance of its duties in and about the bailment in the first count of said complaint alleged, whereby plaintiff's loss of the certificates in said count

[First Nat. Bank of Birmingham v. First Nat. Bank of Newport.]

mentioned was caused. 2. For that the omission or alleged negligence complained of against plaintiff in and by said plea occurred before said bailment in said count of said complaint mentioned was created, or said contract of bailment was made. 3. For that no such alleged negligence would or does excuse defendant for its failure to perform the bailment in said count alleged, but on the contrary makes the care which defendant owed to plaintiff greater. *4. For that said plea fails to set out the laws of Texas authorizing the recording of said certificates or transfers. 5. For that said plea fails to show that there was any law authorizing the record of said transfers or certificates."

To the seventh plea the plaintiff demurred upon the following grounds: "1. For that said plea presents no defense to plaintiff's said action, nor does it allege any facts that bar or preclude plaintiff from recovering upon its cause of action in said count of said complaint set forth and alleged. 2. Because it is not necessary to fasten liability upon defendant for the breach of the contract of bailment averred, that the defendant should have held itself out as being engaged in the business of receiving for deposit such certificates or transfers as those set out and described in plaintiff's complaint, or that defendant should have been engaged in the business of receiving such land transfers or certificates for special deposit, or that defendant had not authorized its agent to receive the same. 3. Because the liability of defendant for breach of its contract of bailment as set out in plaintiff's complaint, is not destroyed or affected by a want of knowledge on the part of any other officer or agent of defendant than of such agent or officer who did receive the said certificates or transfers, of the fact that they had been so received, prior to the loss thereof. 4. Because it is not denied by the said plea that said defendant was at the time a banking institution, chartered and organized for the purpose of engaging in the general banking business, and in receiving claims and other papers for collection, in the usual course of business of such banks, chartered under the national banking laws of the United States, and that when its officer or officers received said certificates, it was engaged in carrying on said banking business; and does not deny that said certificates came to the hands of some officer

of said bank, and does not deny the averment of the complaint that said certificates have not been returned to the plaintiff. 5. Because said defendant is liable to plaintiff for all such damages as proximately arose from the breach by defendant of its implied contract of bailment, and its promise to restore the said certificates to plaintiff, on demand, whether or not defendant was engaged in the reception of such special deposits, or had or had not authorized its officers and agents to receive the same or not. 6. Because said count number 3 avers that said papers were sent to defendant as a bank for the purposes of collection, and said plea attempts to escape liability for the loss of said collaterals so sent by pleading a limited authority to defendant's agent without averring any notice to plaintiff of such limitation." The demurrer to the fifth plea was sustained, and the demurrer to the seventh plea was overruled. Thereupon the plaintiff filed the following replication: "1. For a replication to defendant's seventh plea to the third count, the plaintiff says that said twenty (20) transfers of land certificates were sent on, to-wit, the 12th day of August, 1887, by the plaintiff, addressed to E. W. Linn, as cashier of the defendant, and who was such cashier, and were by said Linn, as such cashier of defendant, received on, to-wit, the 16th day of August, 1887, and the receipt of said E. W. Linn, as the cashier of said defendant, who was authorized to receive all papers sent for deposit and collection, acknowledging that said package containing said papers had been received by defendant and placed on the collection list of said bank, was forwarded and received by the plaintiff, and that no notice was given to plaintiff that said Linn did not have authority to receive them, and no return has ever been made of said papers by said defendant to plaintiff; wherefore, plaintiff says that the defendant is estopped from denying that said Linn had authority to receive said papers, and that defendant received said transfers." To this replication the defendant demurred upon the following grounds: "1. Said replication does not aver that said E. W. Linn had authority to receive said transfers for the purpose for which it is alleged in the third count of the complaint, as amended, they were delivered to defendant. 2. It is not averred in the first replication to said plea, nor in third count of the com-

[First Nat. Bank of Birmingham v. First Nat. Bank of Newport.]

plaint as amended that the transfers were delivered to or received by the defendant for collection, and it is only averred in said replication that said E. W. Linn had authority to receive all papers delivered to defendant for deposit and collection. 3. The averment that E. W. Linn's receipt acknowledged that the package containing said transfers had been received by defendant and placed on the collection list of said bank, is not an averment that said transfers were placed on the defendant's collection list, or received by defendant, for collection. 4. Under the averment of the seventh plea and the first replication to it, no duty rested on the defendant to notify the plaintiff that said E. W. Linn did not have authority to receive said transfers for the purpose it is alleged in the third count they were delivered. 5. There are no facts averred in said replication which would estop defendant from denying the authority of said Linn to receive the transfers for the purpose it is alleged in said third count they were delivered to defendant." This demurrer was overruled.

The cause was then tried upon issue joined upon the pleadings. The facts of the case and those pertaining to the rulings on the evidence are sufficiently stated in the opinion. The cause was tried by the court without the intervention of a jury, and upon the hearing of all the evidence the court rendered judgment in favor of the plaintiff, to the rendition of which judgment the defendant duly excepted. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

WALKER, PORTER & WALKER, for appellant, in a lengthy argument presented and discussed the following propositions as applicable to this case :

The averments of the first count show that the bailment was not for a reward, but was a gratuitous bailment, and the due diligence which the defendant is alleged to have failed to observe was a higher measure of care than the law required.

The pleas of the defendant, setting up that the damages claimed by the plaintiff were the result of his failure to record the transfers, presented a defense to the action, and the demurrers to such pleas should have been overruled. The failure to record said transfers was the prox-

imate cause of incurring the expenses on the part of the plaintiff, to establish such transfers.

The 7th plea, setting up that the defendant was not engaged in the business of receiving land transfers for the purposes alleged in the complaint, and that the agent who received such transfers had no authority to do so, presented a good defense to the maintenance of the suit. The plaintiff's replication to this plea was not sustained. If Linn had no authority to receive them, and the defendant had never engaged in the business of receiving such papers, or held itself out as doing so, then it was under no obligation to notify plaintiff that Linn had no such authority. It was not a part of its necessary business as a bank, and not a part of the business it actually carried on, and it had never done anything to make the public believe it was engaged in any such business.

The judgment of the court should have been for the appellant, for the reason that the appellee failed to prove that the instruments which were lost were ever received by the appellant. The appellant was entitled to a judgment because the proof failed to show that any one of the twenty transfers, alleged to have been lost, was ever executed, and the proof failed to show the contents of the lost instruments to such an extent that the court could say they were transfers. The action was not for the value of the instruments lost, but for expense in procuring substitutes, and such expense could only be justified on the idea that the lost instruments were valid, and so worth the expense of substitution.

But, if the appellee was entitled to recover at all, he was only entitled to recover nominal damages. None of the damages claimed in the complaint, and for which the judgment was rendered, could have been within the contemplation of the parties, at the time the contract was made. The damage claimed was special and extraordinary and not disclosed by the transfers themselves, and in order to fasten a liability on the appellant for such damages, the rule is that notice of the character of the instruments and the extraordinary care required in handling them should be communicated to the bailee.— *Daughtery v. American Union Tel. Co.*, 75 Ala. 178.

JAMES E. WEBB and JAMES C. WRIGHT, *contra*.—The court properly overruled the demurrers to the first count.

By the delivery and receipt of the transfers there was created a bailment for a reward and not a gratuitous bailment. In business transactions between corresponding banks, even if no money is paid or promised to be paid to the bank, in all cases where papers are sent, "the benefit to be derived by increase of business that is expected to accrue by the reason of the chances of the money being left uncalled for for a time and the bank's use of it, or from the hope of attracting customers and increasing its business by offering such facilities is itself a consideration."—*Yerkes v. Bank*, 69 N. Y. 386 ; *Leach v. Hale*, 31 Iowa, 69 ; 1 Morse on Banks & Banking, §§ 194, 215 ; *Prince v. Ala. St. Fair*, 106 Ala. 344 ; *Hubbell v. Bland*, 87 Mich. 209 ; 49 N. W. Rep. 502 ; Edwards on Banks, § 62.

The replication to the defendant's 7th plea was sufficient, and the demurrer of defendant was properly overruled. The bailment being such a one as the defendant bank was authorized to undertake, (as was decided in *Graham's Case*, 100 U. S. 699), and being within the ordinary course of defendant's business, the cashier in receiving it acted within the scope of his authority ; and the plaintiff had the right to rely upon the receipt of the cashier as to the transfers being received by the bank. The transfers being received by the cashier of the bank, the bank was liable for the loss of them.—Ball on National Banks, §§ 60, 63 ; *United States v. City Bank*, 21 How. (U. S.) 356 ; *Merchants Bank v. State Bank*, 10 Wall. 645 ; *Yerkes v. National Bank*, 69 N. Y. 382 ; *Van Lewen v. Bank*, 54 N. Y. 677.

The expenses claimed as damages were the legitimate, natural and proximate result of the loss of the papers, in order to place the plaintiff *in statu quo*, and such damages being specially averred and claimed, were recoverable.—*Van Lewen v. Bank*, 54 N. Y. 677 ; *Hughes v. Bank*, 110 Pa. St. 428 ; *Leach v. Hall*, 31 Ia. 69 ; Morse on Banks & Banking, §§ 151, 153, 162, 164 ; 16 Amer. & Eng. Encyc. of Law, pp. 160, 206.

BRICKELL, C. J.—One J. S. Carr, being indebted to the First National Bank of Newport, Ky., appellee, in the sum of ten thousand dollars, for which he had given his note, delivered to said bank as collateral security twenty transfers of Texas land certificates, each of

34

[First Nat. Bank of Birmingham v. First Nat. Bank of Newport.]

which entitled the holder to a section of land in Texas, to be selected and located according to the laws of that State. On August 12, 1887, appellee sent these transfers to the First National Bank of Birmingham, appellant, together with the following letter of instructions: "E. W. Linn, Cashier, Birmingham, Ala., Dear Sir: Enclosed find our collection transfers for twenty sections Texas lands, which are to be delivered to J. S. Carr on payment of $540 each. Please report by numbers." To this it received on August 15th, the following reply on a postal card: "Dear Sir: Your favor of the 12th instant is received with stated enclosure. E. W. Linn, Cashier." The name of the cashier was printed on this card, and all the writing thereon was that of a clerk named Tarver, who had charge of the collection department of appellant, and was under the direct supervision and control of the cashier. The card was one of a number of printed forms used by appellant at the time to acknowledge the receipt of papers sent to it. While these transfers were in the possession of the appellant they were lost, but how, or under what circumstances, is not shown either by the averments of the complaint or by the evidence; and this action was instituted by the appellee to recover damages for the failure of appellant to return the transfers on demand made. The first count of the complaint, after describing the transfers and the indebtedness of Carr to the plaintiff, alleged that said Carr had "indorsed, transferred and assigned the same to plaintiff as collateral security," and that plaintiff sent them to defendant, and they were "received by defendant as a special deposit, with instructions to deliver the same when called for by said Carr upon his paying to the defendant the sum of $540 for each of said transfers." It then charged the implied duty and agreement of defendant to have been to "use due diligence to safely and securely keep said transfers and deliver the same to said Carr upon the payment by said Carr of the said five hundred and forty dollars for each of said transfers," and to return the same to plaintiff on demand, if Carr should fail to pay according to instructions; and the breach of this duty to have been that "defendant grossly neglected its duty in the premises, and so negligently cared for the said transfers that the same were lost by the said defend-

ant;'' and that, although plaintiff had demanded the return of said transfers, defendant had failed and refused to return the same. The damages claimed are the expenses incurred by the plaintiff in instituting and prosecuting suits in Texas to establish the lost transfers. The third count, which was added by amendment, omitted the words "as a special deposit," and charged the implied duty of defendant to have been to "use diligence to safely and securely keep said transfers and deliver the same to the said Carr upon the payment," etc.; and the breach to have been that "defendant so neglected its duty in the premises, and so negligently cared for said transfers that the same were lost by the said defendant," etc.

The objection to the first count of the complaint specified in the demurrer is, that the facts alleged show defendant to have been a mere gratuitous bailee of the transfers, and the count avers a failure to exercise a higher degree of diligence than the law imposes on one who has accepted a gratuitous bailment. But we are of opinion that the transaction created something more than a special deposit, and that the bailment must be treated not as a naked, gratutious bailment, but as one undertaken for a reward and compensation, whether or not any compensation was in fact directly paid or expected to be paid. It clearly appears from the averments that the transfers were held by plaintiff as collateral security for a debt due from Carr, and were sent to defendant for collection, the instructions being to deliver them to Carr upon the payment by him of five hundred and forty dollars for each transfer. The duty of defendant, therefore, with respect to the care to be exercised in keeping them, was the same as that which the law exacts on the part of a bank which has received a note, or collaterals accompanying a note, for collection. The taking of paper for collection is a regular and customary part of the banking business, to engage in which requires no special authorization in the bank charter, and the making of collections by a bank is no more a gratuitous undertaking than the transaction of any other part of its business. Whether any charge is made for the collection or not, in a particular case, it is well settled that the indirect profit and benefit derived by the bank from the use of the money collected for the time

[First Nat. Bank of Birmingham v. First Nat. Bank of Newport.]

it may be left in its hands, the advantage of settling its accounts with distant banks without being compelled to send money to and fro between them, and the development and extension of its business by serving the convenience of its customers, constitute a sufficient and valuable consideration for the undertaking to collect paper left with it for that purpose.—1 Morse on Banks, § 215; *Exchange Nat. Bank v. Third Nat. Bank*, 112 U. S. 288; *Merchants' Nat. Bank v. Goodman*, 109 Pa. St. 426; *Gallipolis Nat. Bank v. Butler*, 41 Ohio St. 519; *Mechanics' Bank v. Merchants' Bank*, 6 Metc. (Mass.) 13; *Smedes v. Bank of Utica*, 20 Johns. (N. Y.) 382; 3 Am. & Eng. Encyc. of Law, (2 ed.), 802. The same consideration will support the implied contract of bailment with respect to the papers sent for collection and collaterals accompanying it, and prevent the bank from availing itself of the defense that it undertook the care of the same as a mere gratuitous favor. We do not doubt that the contract implied from the receipt of the transfers for collection by the defendant, was that of a lucrative, and not a gratuitous bailment. The duty of the defendant, therefore, was to exercise ordinary care in the keeping and preservation of the transfers until redeemed by Carr, and the restoration of them to the plaintiff on demand in the event they should not be so redeemed, and for ordinary neglect in the performance of this duty defendant would be liable. No higher degree of care than this is charged in the count by the use of the words "due diligence."—*Prince v. Ala. State Fair*, 106 Ala. 334; *Seals v. Edmondson*, 71 Ala. 514; *Higman v. Camody*, 112 Ala. 267; *Chicopee Nat. Bank v. Seventh Nat. Bank*, 75 U. S. (8 Wall.) 641; *Preston v. Prather*, 137 U. S. 607; *Ouderdirk v. Nat. Bank*, 119 N. Y. 263; *Gray v. Merriam*, 148 Ill. 179; s. c. 32 L. R. A. 779, notes; *Essex Bank v. Foster*, 17 Mass. 479. The demurrer to the first count was properly overruled.

The cashier of a bank is its general executive officer, whose office is to manage all the affairs of the corporation not peculiarly committed to the directors. By his induction into the office he is held out to the world as having authority to act according to the general usage, practice, and course of business of banking intitutions, and any act of his within the scope of the usage, practice and course of business of such institutions, will,

therefore, bind the corporation in favor of third persons who did not know that he was acting beyond the scope of the express authority conferred upon him by his principal. The public at large usually have no other knowledge of the powers of the cashier of a particular bank than such as is derived from the usage and practice of banks in general, and even though his power may be expressly limited by the directors, such limitation will not affect those to whom it is unknown, if the transaction was one within the scope of the ordinary course of business of banking institutions.—1 Morse on Banks, § 171 (d) ; *Case v. Bank*, 100 U. S. 454 ; *Merchants Bank v. State Bank*, 10 Wall. (U. S.) 650 ; *Lloyd v. West Branch Bank*, 15 Pa. St. 172. Not only do banks organized to do a general banking business have the power and authority to receive paper for collection, but it is a matter of common, and therefore of judicial, knowledge, that it is their general usage and practice to engage in this branch of business ; and this power necessarily carries with it authority to receive collaterals accompanying, and given to secure the payment of such paper, to be delivered to the debtor when he takes up the paper. The power of the cashier to receive paper for such purpose is inherent in his office and requires no special authorization from the directors, and the receipt by him of such papers is clearly within the scope of his authority and, therefore, binding on the bank. It follows that if one, relying on the general usage and custom of banks, and having no knowledge or notice of any limitation upon the authority of the cashier of a particular bank, known to be engaged in doing a general banking business, should deliver to such cashier, at his regular place of business, a note or bill for collection, together with collaterals given to secure said note or bill, the bank could not afterwards claim that the act of the cashier in receiving the same was his individual act and not that of the bank. It does not appear from the complaint that the note evidencing the indebtedness of Carr to the plaintiff was sent to the defendant with said transfers, nor, indeed, that there was such a note ; but the complaint does allege that the transfers were the property of Carr, that they were transferable by indorsement, and had been indorsed to plaintiff as collateral security, and were sent to defendant for collection. These facts appeared

on the transfers themselves, and it is not alleged that the plaintiff had indorsed them. *Prima facie,* therefore, the transaction was not the same as that arising from the sending of a deed to a bank to be delivered to the grantee upon the payment of the purchase money, but, on the contrary, the facts appearing on the transfers, in the absence of any indorsement by the plaintiff, must have suggested to the defendant that they were held by the plaintiff as collateral security. Hence, we are of the opinion, it may be declared as a matter of law that the receipt for collection by a bank engaged in transacting a general banking business, of papers transferable by indorsement, which, although not of themselves evidence of an indebtedness, show by the indorsements thereon that the person sending them must hold them as collateral security for an indebtedness, and which are, in fact, held as such collateral security, is within the usage, custom and ordinary course of business of banking institutions; and, therefore, that the act of receiving such papers by the cashier of such bank is within the scope of his authority, and not his individual act, but that of the bank, in the absence of any knowledge or notice on the part of the sender of any express limitation on the authority of the cashier with respect to the character of the papers which he may receive for collection.

It results from what has been said that plaintiff's replication to defendant's seventh plea to the third count was a complete answer to said plea, and the demurrer to the replication was, therefore, properly overruled. This plea set up. the defense that the transfers were received by an agent of defendant (but by what agent is not alleged); that defendant was not, at the time, engaged in the business of receiving land transfers for the purpose alleged, that is, for collection; that it had never by any act held itself out as being engaged in the business of receiving such transfers, and had not authorized its agent to receive the same, and had no knowledge that he had done so, prior to their loss, and had never acquiesced in or ratified the agent's act. To this plea plaintiff replied that said transfers had been received by the cashier of defendant, who had authority to receive all papers sent for deposit and collection, and who had acknowledged by letter the receipt of the same, and that plaintiff had no notice of the cashier's want of authority

to receive such papers. The complaint shows that the defendant is a national bank, organized under the nattional banking laws of the United States, and such banks are authorized by their charter to engage in a general banking business and are presumed to be engaged in such business. The defense set up by the plea was, not that the act of the bank in receiving such transfers was *ultra vires*, but that, inasmuch as the defendant was not engaged in the particular business of receiving for collection transfers of land certificates, the act of its agent was beyond the scope of his authority, and therefore not binding on his principal. The effect of the replication, construed in the light of the principles we have stated, was to assert that the transfers were received by an agent who was held out by the defendant as having authority to bind it by any act done within the scope of the general usage, practice and course of business of banking institutions, and that plaintiff had no notice of any limitation upon the agent's authority, and the act was, therefore, within the scope of his authority. If the facts stated in the replication were true, then the act of the cashier in receiving the transfers for the purpose for which they were sent was, in law, the act of the defendant.

It is an elementary rule of pleading that a plea which professes to answer the whole of a complaint, or of any count thereof, is bad on demurrer if it is an answer to a part only.—*Galbreath v. Cole*, 61 Ala. 141; *Wilkinson v. Moseley*, 30 Ala. 562; *White v. Yarbrough*, 16 Ala. 109. And when the cause of action is sufficiently stated to authorize a recovery of any, even nominal damages, a partial defense denying the right to recover a part of the damages claimed, must be availed of by a motion to strike out the objectionable averments, or by objection to the evidence and through instructions to the jury.— *Kennon v. W. U. Tel. Co.*, 92 Ala. 402. The fifth plea, though assuming to answer the whole of the first and third counts, does not negative the cause of action, nor present any defense to the whole of the counts, but only to that part of them which claims as damages the expenses incurred by plaintiff in prosecuting suits in Texas to establish the lost transfers. The defense it seeks to set up is, that the plaintiff was negligent in failing to have said transfers recorded, as, by the laws of Texas

which are set out in the plea, it might have done, and that the incurring of said expense was rendered necessary only by reason of such negligence. It is manifest that the failure to record the transfers did not contribute in any degree to the loss of the transfers, and that, conceding the truth of the facts alleged, plaintiff would still be entitled to recover nominal damages at least for the failure of defendant to exercise ordinary care to keep the transfers and deliver them to plaintiff on demand. We hold, moreover, that the failure to record the transfers was no defense to the recovery of the special damages claimed. The demurrer to this plea was properly sustained.

The case was tried by the court without a jury, and the judgment of the court is assigned as error. It is insisted by counsel for appellant that the evidence fails to show that the transfers were received by the cashier, but we are of the opinion that the evidence on this point was sufficient to justify the conclusion that they were so received. It shows that they were sent directed to the cashier of the bank ; that three days thereafter a postal card acknowledging their receipt and purporting to come from the cashier was received by plaintiff ; that this postal card was one of a number of printed forms used by defendant to acknowledge the receipt of papers sent to it ; that the writing on the card was that of a clerk who had charge of the collection department under the direction and control of the cashier ; and that the name of the cashier was printed thereon, instead of written by the cashier himself. In the absence of any evidence tending to show that the cashier did not receive the transfers, it must be presumed from the facts shown that the package reached the cashier to whom it was directed, and that he had knowledge of its receipt. The impossibility of more direct proof on the part of the plaintiff justifies the presumption. It was not necessary in this action to prove, with the particularity required to show title to land, the execution and contents of the transfers, and it was competent for the witnesses to call the papers "transfers," without describing their contents or proving their execution. The execution and contents of the transfers were not in issue. Plaintiff deposited with defendant what purported to be transfers of Texas land certificates, and these it was entitled to

have restored to it, and defendant was liable to respond in damages for failing to restore them, whether they were or not in fact such transfers or duly executed as such. The damages claimed are not the value of the transfers, but the expenses incurred in substituting them, not exceeding their value as a security. It is shown that each "called for" one section, six hundred and forty acres, of Texas land, and that they were afterwards substituted, partly by litigation and partly by the voluntary act of the only person who could substitute them, and the land called for procured upon the substitutes. We think this evidence, however slight, was sufficient, under the circumstances, to show that the value of the transfers as a security was equal to the damages legally proven.

The defendant offered no evidence on the trial of the case, and the testimony of the plaintiff showed only that the transfers had been lost, or had disappeared, but how, or under what circumstances, whether they had been mislaid, or stolen, or destroyed, or inadvertently delivered to the wrong person, does not appear. The presumption is conclusive, therefore, that the defendant failed to exercise that degree of care in keeping them which the law imposed on it. The loss of paper by a bank to which it had been sent for collection carries with it the presumption of negligence and want of care, and the burden of proof to rebut the presumption is on the bank.—*Chicopee Bank v. Seventh Nat. Bank,* 75 U. S. (8 Wall.) 641. And it is a general rule, that in an action against a bailee for the failure to redeliver the property bailed, if the proof shows such failure, *prima facie* negligence will be imputed to the bailee; and if the testimony of the plaintiff shows only that the property was lost, the burden of showing the circumstances of the loss is devolved on the defendant; and unless the evidence shows due care by him according to the nature of the bailment and the property bailed, he will be held responsible for the breach of his contract to redeliver the property.—*Prince v. Ala. State Fair,* 106 Ala. 346; *Seals v. Edmondson,* 71 Ala. 512; *Ouderdirk v. Central Nat. Bank,* 119 N. Y. 263; *Pattison v. Bank,* 80 N. Y. 82; *First Nat. Bank v. Trent,* 39 Ohio St. 705; *First Nat. Bank v. Graham,* 85 Pa. St. 91. Under the testimony, therefore, plaintiff was clearly entitled to a judgment, and the final question presented is the correctness of the

court's finding as to the amount of damages awarded. One of the well recognized methods of raising an objection to illegal damages claimed in a complaint is by objecting to the evidence offered to prove such damages. *Kennon v. W. U. Tel. Co.*, 92 Ala. 402. This method defendant availed itself of by objecting to the evidence tending to prove the various items of expense incurred by plaintiff in prosecuting the suits to procure substitutes for the lost transfers. It is insisted by counsel for appellant that the expenses thus incurred, and which were allowed by the court as a part of the damages awarded, could not have been within the contemplation of the parties at the time the transfers were delivered to defendant, and that the claim for such damages is based on circumstances that were special and exceptional, and not suggested, nor likely to be suggested, by the appearance of the transfers ; and, therefore, such damages were not the natural and proximate result of the breach of the contract. But the measure of the recovery is not varied by the fact that the parties did not have in view as the result of the breach of the contract, the necessity of instituting legal proceedings to establish and substitute the lost transfers. The law, and not the contemplation of the parties, fixes the measure of damages.—*Collins v. Stephens*, 58 Ala. 545. And the rule of law is, that the damages recoverable for the breach of a contract must be the natural and proximate consequences of the breach, such as would result in the usual course of things, as distinguished from accidental or collateral injury or from such as would spring out of special circumstances not usually attendant upon such transactions.—*Daughtery v. Amer. Un. Tel. Co.*, 75 Ala. 170 ; *Collins v. Stephens, supra.* The circumstances from which plaintiff's claim for damages arises are not special or exceptional, but, on the contrary, are such as the parties must have had in contemplation, if they had contemplated any breach of the contract and the probable consequences thereof. The natural and proximate damages resulting to plaintiff from the loss of the transfers was the amount of their value as a security, not exceeding the amount of the debt secured, if they could not be substituted ; and if they were capable of being substituted or restored, the amount of the expense of procuring such substitution, not exceeding their value

as a security. Such expenses, we do not hesitate to say, were recoverable in this action. But plaintiff, after placing itself in the position it occupied before the loss of the transfers by procuring their substitution, could not go further and better that position at the expense of the defendant. It appears from the testimony of the Texas attorney who conducted all the legal proceedings in that State, which testimony embraces not only the facts connected with the legal proceedings, but also the law of the State of Texas governing land certificates and transfers thereof, and the right of the holders of the same, that when the holder of such certificate, or a transfer thereof, desires to have the land located and appropriated, he must apply in writing to the district surveyor, describing the land which he wishes to appropriate, and file his certificate with the surveyor. The latter then surveys the land described in the application, records the field notes in his office, and sends to the General Land Office the original certificate and a certified copy of the field notes. The land is then ready for patenting. The certificate itself, after being filed in the land office, can not be transferred, but if the owner desires to put the land on the market before a patent issues, he may execute a written transfer purporting to convey all his right, title and interest in the certificate described therein, and to the land appropriated by virtue of such certificate. The transfer vests in the transferee an equitable title to the land, and may be filed in the land office. If no transfer of the certificate is on file in the land office, a patent for the land may be issued to the person to whom the certificate was originally issued; but if the transfers are on file, then the patent issues to the last transferee. The transfers may be issued in blank so as to pass from hand to hand by delivery, and the blank may be filled up by the owner inserting his name. If the holder of a transfer desires to protect himself, the transfer may be filed in the office of the clerk of the county court of the county in which is situated the land appropriated by virtue of the certificate transferred, and the filing operates as notice to the world of the rights of the transferee named therein. If a written transfer has been lost, so that it can not be filed in the land office to secure a grant to the transferee, or filed for record in the office of the proper county clerk, so as

to evidence the transferee's equitable title, the only remedy of the transferee is to secure substitute transfers, or to sue to establish his title. Of the twenty certificates the transfers of which are involved in this suit, ten had been issued to the Texas Central Railway Co., which company, after having had the land located and appropriated and filed the certificates in the General Land Office, executed transfers thereof to Alvin Sortwell, and these transfers had been filed in said office. Sortwell afterwards executed transfers to Carr, and the latter indorsed them to plaintiff, but these transfers to Carr had not been filed in the land office; so that, on the face of the records in the land office, Sortwell was entitled to the patent for the land appropriated by virtue of these certificates. Sortwell, however, as the testimony shows, voluntarily executed substitute transfers to take the place of those lost, and these substitutes placed plaintiff in precisely the same position it occupied before the loss with respect to ten of the lost transfers. To procure these substitutes legal advice, an investigation of the records in the land office, and a trip to Boston, where Sortwell lived, seems to have been necessary, and the aggregate expense incurred was $205, which is shown to have been reasonable, and which was, therefore, properly allowed as an element of damages. The other ten certificates had been originally issued to the Texas Trunk Railroad Co., and had been filed in the land office after the land had been properly appropriated, but it does not appear who, besides Carr, were the subsequent transferees of said certificates, and no transfers had been filed in the land office or with the proper county clerk. *Prima facie*, therefore, the Texas Trunk Railroad Co. was entitled to the patent. Efforts to procure substitute transfers from this company having failed, suit was instituted against it in Pecos county, Texas, in the name of Carr as plaintiff, and a judgment was rendered in his favor declaring that the certificates had been duly and legally sold and transferred to him, and that he was the legal owner thereof and was entitled to recover the lands appropriated by virtue of said certificates. This character of suit and judgment seems from the testimony to have been necessary under the laws and practice of Texas. The judgment thus obtained was filed in the general land office and took the place of the transfers,

entitling Carr to a patent for the land, and a patent was issued to him. Carr then gave to plaintiff a mortgage on the lands to secure the same debt to secure which the transfers had been given. The total expense of this litigation, as shown by the testimony of the attorney who conducted it, was $553.77, of which $375 were paid for the attorney's fee and the balance for costs and expenses, all of which is shown to have been reasonable and necessarily incurred. Now, as a result of the proceedings had up to this time, it seems to us plaintiff was placed as nearly in the position it had occupied before the loss of the transfers as, according to the testimony, it was possible to place it. Its debt was secured by a mortgage on the same land called for by the certificates of which it originally held transfers as collateral security. But after being placed in this position, it then proceeded to foreclose the mortgage by suit, and purchased the land at the foreclosure sale, and the expenses of this foreclosure, amounting to something over six hundred dollars, were claimed as a part of plaintiff's damages, proven, and allowed by the court. This was clearly not a proper element of plaintiff's damages necessarily incurred by reason of the loss of the transfers, and therefore should not have been allowed. The fact that other persons had asserted, or were about to assert, claims against the land as creditors of Carr could not justify the charging of this expense to defendant. This was, in truth, a special or exceptional circumstance within the meaning of the rule stated above, the damages springing from which are not recoverable. After a careful consideration of all the testimony, we are of the opinion that the only damages recoverable were the expense of procuring the substitute transfers from Sortwell, amounting to $205, and the expense of the suit against the Texas Trunk Railroad Co. to establish the title of Carr, amounting to $553.77, making a total of $758.77, upon which interest on $150 thereof must be allowed from September 22d, 1890, and on the remainder from May 22d, 1891, these appearing to be the days of payment by appellee.

The judgment of the city court is reversed, and a judgment here rendered in accordance with this opinion. The appellee must pay the costs of this appeal in this court and in the city court.

Reversed and rendered.