(83 South. 321)

BANK OF ECLECTIC v. STURDIVANT BANK. (5 Div. 726.)

(Supreme Court of Alabama. Nov. 13, 1919.)

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS �köö12(2)—BANK ACQUIRING ASSETS OF ANOTHER BANK FOR PRE-EXISTING INDEBTEDNESS LIABLE ON ITS DEBTS.

Where defendant bank acquired the assets of another bank for a pre-existing indebtedness, a claim against the latter bank may be enforced against defendant under Code 1907, § 4295, making conveyance of substantially all of a debtor's property for a pre-existing debt equivalent to general assignments for the benefit of creditors.

2. BILLS AND NOTES �köö519 — EVIDENCE OF PROMISE TO ACCEPT DRAFT PRIMA FACIE EVIDENCE OF INDEBTEDNESS.

Evidence that president of a bank arranged for certain credit to be extended by plaintiff, together with letters to the same effect from the bank's cashier, promising to honor drafts, and stating that it was remitting for the draft involved, etc., held prima facie evidence of bank's liability to plaintiff, irrespective of the cashier's actual authority to accept drafts.

3. ESTOPPEL �köö54—STATEMENTS NOT COMMUNICATED.

A party cannot base a claim of estoppel upon statements not shown to have been communicated to it.

Appeal from Circuit Court, Elmore County; Gaston Gunter, Judge.

Action by the Sturdivant Bank against the Bank of Eclectic. Decree for plaintiff, and defendant appeals. Affirmed.

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The bill in this case was filed by the Sturdivant Bank, a partnership, against the Bank of Eclectic (appellant), the Elmore County Bank, and others. The bill, in substance, charges, as follows: The Elmore County Bank, prior to December 7, 1916, was engaged in the general banking business, with H. S. Holloway as president and G. A. Collins as cashier, and that on said date the Bank of Eclectic was also engaged in a general banking business; that in 1916 said Holloway, president of the Elmore County Bank, was engaged in buying cotton in Dadeville, Ala., employing one T. J. Gilliland as his agent for that purpose; and the said Holloway, desiring to arrange for the necessary funds for his agent with which to make his purchases, and to provide a checking account upon which his agent could check in payment for cotton bought by him from day to day, requested the complainant bank to cash drafts drawn by said agent on the Elmore County Bank, assuring complainant that all of said drafts would be honored by said bank. The said Elmore County Bank, by its cashier, gave to complainant the following agreement or letter of credit:

"Elmore County Bank.

"Eclectic, Ala., Sept. 29, 1916.

"Sturdivant Bank, Dadeville, Alabama—Gentlemen: This is to advise that we will honor drafts of T. J. Gilliland for his daily cotton purchases in your city. You may send these drafts direct or through regular channel and we will remit them at par.

"Yours very truly,

"G. A. Collins, Cashier."

It is averred that under this letter of credit the said agent, between the above date and the 18th of October, 1916, drew a number of drafts on the Elmore County Bank through the complainant bank, upon which complainant advanced the cash to said Gilliland, placing the same to his credit on the books of the complainant bank, which amounts were checked out by said agent in making his purchases; said drafts so drawn being paid to complainant by the Elmore County Bank.

On October 18, 1916, the said Gilliland drew a draft on the Elmore County Bank for $1,000, which complainant cashed, placing the same to his credit, and said amount was checked out by him in the purchases of cotton. It is further averred that complainant sent the draft to the Elmore County Bank for payment, in accordance with its previous agreement with the president of said bank and the letter of credit above set out, and received from said bank the following acceptance:

"Elmore County Bank.

"Eclectic, Ala., 10/20/16.

"The Sturdivant Bank, Dadeville, Alabama—Gentlemen: This is to advise that we are to-

day remitting $1,000.00 to the Chase National Bank of New York for your credit and advice.

"Yours very truly,

"G. A. Collins, Cashier."

The bill alleges, however, that said remittance was not made, and that said draft remains unpaid. It is further alleged that on December 7, 1916, the Elmore County Bank sold and transferred to the Bank of Eclectic all of its assets of every character for a recited cash consideration of $10, and the further consideration of the Bank of Eclectic assuming and agreeing to pay all liabilities of the Elmore County Bank, as shown by its records, and, further, that said Bank of Eclectic has so assumed charge of said assets; that at the time of said sale, the Elmore County Bank was indebted to the Bank of Eclectic in a large sum which constituted a substantial part of the consideration for the sale of its assets to the Bank of Eclectic; and that the real consideration for said sale was the said indebtedness to the Bank of Eclectic and the agreement on the part of said bank to pay the debts and assume the liabilities of the Elmore County Bank; that the property sold constituted all, or substantially all, of the property of the Elmore County Bank. It is further averred that, in addition to the agreement of the Bank of Eclectic to pay the debts of the Elmore County Bank, said sale by the Elmore County Bank of all its assets, under the circumstances shown, was a general assignment for the benefit of the creditors of the Elmore County Bank, and that the complainant is therefore entitled to have the assets administered so as to have its debts paid out of said assets by the Bank of Eclectic, the assignee.

The bill was demurred to for want of equity, and for its failure to show that the complainant was a creditor of said Elmore County Bank, and upon the further ground that the allegations of the bill show that the acceptance of said draft was not in writing and subscribed to by the Elmore County Bank. The demurrer was overruled, and the bill answered.

Complainant offered testimony tending to support the material averments of the bill, and there was evidence tending to show that at the time of the sale by the Elmore County Bank to the Bank of Eclectic, the former was largely indebted to the latter on account of dishonored checks and drafts.

The testimony also tended to show that the draft in question had not been paid, and that the same had been destroyed by the president of the Elmore County Bank prior to the sale; that it was not on the files of the bank at the time; and, further, that one of the members of the Sturdivant Bank had told the president of the Elmore County Bank that he thought the drafts had all been paid, but there is no evidence that this was com-

municated to the Bank of Eclectic at the time or prior to the transfer. This statement on the part of the member of the Sturdivant Bank grew out of some confusion in reference to correspondence and telegrams as to a number of drafts on said Elmore County Bank.

The trial court was of the opinion that while the special agreement of the Bank of Eclectic to pay all the liabilities of record of the Elmore County Bank did not include the liability on this particular draft, because the same was not of record at the time of the purchase, nevertheless the court was of the opinion that the Bank of Eclectic purchased and took over all of the assets of the Elmore County Bank upon consideration of a pre-existing debt, and that such a conveyance operated as a general assignment for the benefit of all the creditors of said Elmore County Bank, and that the Elmore County Bank was liable to the Sturdivant Bank for the amount of said draft. A decree was entered, granting the relief prayed, from which respondent Bank of Eclectic prosecutes this appeal.

George F. Smoot and J. M. Holley, both of Wetumpa, for appellant. Sections 5081, 5086, 4295, Code 1907, were complied with, so as to authorize relief. Where one of two innocent persons must suffer by the wrongful act of the third, he who enabled the other party to cause it must bear the loss. Noble v. Moses, 74 Ala. 604; Person v. Thornton, 86 Ala. 308, 5 South. 470; Hill v. Nelms, 86 Ala. 442, 5 South. 796; Turner v. Flynn, 72 Ala. 532; Brown v. Bank, 103 Ala. 123, 15 South. 435. Sturdivant's statement estopped the Sturdivant Bank from claiming on account of the Gilliland drafts. Allen v. Maury, 66 Ala. 10.

James W. Strother, of Dadeville, for appellee. On an assignment or sale by a person or corporation of all of its property, in consideration of the assignee or purchaser undertaking or agreeing to pay the debts of the seller, the creditors may maintain actions against the assignee or purchaser. Dimmick v. Register, 92 Ala. 458, 9 South. 79; North Alabama Development Co. v. Short, 101 Ala. 333, 13 South. 385; Young v. Hawkins, 74 Ala. 370; Coleman & Carroll v. Hatcher & Brannon, 77 Ala. 217; Bessemer Savings Bank v. Rosenbaum Grocery Co., 137 Ala. 534, 34 South. 609; Moore v. First National Bank of Florence, 139 Ala. 595, 36 South. 777; Huckabee v. May, 14 Ala. 263. The sale of all of its property by the Elmore County Bank to the Bank of Eclectic for the purpose of paying its debts, or a part of its debts, was and is a general assignment for the benefit of all of the creditors of the said Elmore County Bank, even if there had

been no express agreement on the part of the purchaser to do so as the consideration for such sale. Elliott et al. v. Kyle, 176 Ala. 376, 58 South. 309; Smith v. Young, 173 Ala. 190, 55 South. 425; Smith v. McCadden, 138 Ala. 284, 36 South. 376; Gay, Hardie & Co. v. Strickland, 112 Ala. 567, 20 South. 919.

Where it is agreed as the consideration for a sale of property that the purchaser will pay the debts of the seller, the purchaser owes the money to such creditors. Tyson v. Austill, 168 Ala. 525, 529, 53 South. 263; Dimmick v. Register, 92 Ala. 458, 9 South. 79.

GARDNER, J. [1] We are in full accord with the conclusion of the court below that at the time of the transfer of all the assets of the Elmore County Bank to the Bank of Eclectic the former was largely indebted to the latter, which debt formed a controlling consideration for such transfer. If the Sturdivant Bank, therefore, was a creditor of the Elmore County Bank at the time, the equity of its bill to have such a transaction declared a general assignment for the benefit of all creditors of said Elmore County Bank cannot be questioned. Section 4295, Code of 1907; Elliott v. Kyle, 176 Ala. 376, 58 South. 309.

[2] Counsel for appellee insists that the acceptance of the draft here in question came within the authority and duties of the cashier of the bank, and that the signature of the cashier is the signature of the bank so far as its effect is concerned (Montgomery B. & T. Co. v. Walker, 181 Ala. 368, 61 South. 951; First Nat. Bk. of Birmingham v. First Nat. Bk. of Newport, 116 Ala. 520, 22 South. 976; Moore v. Pope, 97 Ala. 462, 11 South. 840; McGhee v. Importers' & Traders' Nat. Bk., 93 Ala. 192, 9 South. 734; Morse on Banks, vol. 1, § 156; 7 Corp. Jur. pp. 549, 552, 553; 3 R. C. L. § 74); while counsel for appellant insists that the letter of acceptance, signed by the cashier, does not appear to be binding upon the bank.

This question as to the inherent authority of the cashier we may pass as unnecessary to decide, and without indicating any opinion thereon. The act which the cashier assumed to perform is certainly one intrinsically proper to be committed to his charge. The arrangement for the line of credit to be extended to Gilliland was made by the president of the bank, followed by the letter of credit signed by the cashier, as shown in the statement of the case, and was acted upon in good faith by the Sturdivant Bank in cashing the drafts drawn in accordance with said letter. The testimony offered by complainant—respondents offering no proof—was without dispute, and we think there can be no question that the proof here offered clearly made out a prima facie case of liability on the part of the Elmore County Bank to the

---

Sturdivant Bank for the amount of said draft. Morse on Banks, vol. 1, § 165b. See, also, § 156, same authority; Farmers' & Mechanics' Bk. v. Troy City Bk., 1 Doug. (Mich.) 457.

[3] The evidence shows that one of the members of the Sturdivant Bank, in charge of the correspondence, became confused as to whether or not remittance had been made for this particular draft, and at one time stated to the president of the Elmore County Bank that he thought all drafts had been paid, which statement he subsequently corrected. However, there is no evidence tending to show that the Bank of Eclectic was informed of any such statement at the time or prior to the transfer. There is therefore no evidence whatever going to show that said bank was misled in the least by such statement to Holloway, or that the bank acted upon it in any manner. The essential elements of estoppel are wholly lacking, and this insistence of counsel for appellant is therefore without merit.

What we have said above discloses our opinion that the demurrer to the bill was properly overruled, and that the final decree was justified by the proof and will be accordingly affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.