## CHICOPEE BANK v. PHILADELPHIA BANK.

. Although a bill payable at a particular bank, be physically, and in point of fact, in the bank, still, if the bank be wholly ignorant of its being there—as when, *ex. gr.*, a letter in which the bill was transmitted when brought from the post-office to the bank has been laid down with other papers on the cashier's desk, and before being taken up or seen by the cashier has slipped through a crack in the desk, and so disappeared—the fact of the bill being thus physically present in the bank does not make a presentment.

And this is so, although the acceptor had no funds there, did not call to pay the bill, and in fact did not mean to pay it anywhere.

2. In such a case, therefore, the holder cannot look to prior parties, even though, by having been informed after inquiry by him, that the bill had not been received at the collecting bank, they could have inferred that it had not been paid at maturity by the acceptor.

3. A court having fairly submitted to a jury the evidence in a case, and charged as favorably to a party as he could properly have asked, may, in the exercise of its discretion, refuse a request by that party to charge as to which side the burden of proof belongs.

4. An accidental loss or disappearance in a bank of a bill sent to it to collect, from the bank's not taking sufficient care of letters brought to it from the mail, carries with it a presumption of negligence in the bank; and on a suit against it, the burden of proof is on the bank to explain the negligence.

5. If, through this negligence alone, it is inferable that notice of presentment, demand, and non-payment, were not given to the holder, so as to enable him to hold parties prior to him, the bank guilty of the negligence is responsible to the holder for the amount of the bill, even though the holder himself have not been so entirely thoughtful, active, and vigilant as he perhaps might have been.

THIS was a suit by the Seventh National Bank of Philadelphia against the Chicopee Bank of Springfield, Massachusetts, founded upon the allegation, that by reason of the neglect of the latter bank, the former lost its remedy against the prior parties on a bill of exchange, to wit, the drawer and payee.

The bill was drawn by one Coglin, of Philadelphia, on Montague, of Springfield, payable to one Rhodes, of Philadelphia, for $10,000, and accepted by Montague specially payable at the Chicopee Bank. The day of payment was Saturday, February 18th, 1865. On the 13th, Rhodes, the

holder, indorsed the bill for value to the Philadelphia bank, which sent it at once by mail, inclosed in a letter, to the Chicopee Bank, to receive payment.   The course of the mail between Philadelphia and Springfield, is two days.   On the 15th, this letter with other letters and papers, was duly delivered by the postman, and placed on the cashier's table; but (as was afterwards ascertained), this letter slipped from the pile, through a crack in the table, into a drawer of loose papers, and its presence in the bank was not known to the cashier, and as the two banks had no previous dealings, he was not expecting anything from the other bank.   On the 18th, Montague, the acceptor, made no attempt to pay the bill, either by calling for it, or depositing funds, and subsequently, at the trial, made oath that he intended not to pay the bill, and had a defence against it.   The cashier of the Philadelphia bank, not receiving, on the 17th, an acknowledgment of the letter which he had sent on the 13th, felt somewhat anxious; and on the 18th consulted the president. On Monday, the 20th, he telegraphed to the cashier of the Chicopee Bank as follows:

" Did not you receive ours of 13th instant, with Montague's acceptance, $10,000?"

The dispatch did not indicate either the time or place of payment of the draft; and the reply was sent,

" Not yet received."

This dispatch was received by the cashier of the Philadelphia bank, at noon of the 20th.   He testified at the trial, that he wrote to Mr. Rhodes the same day, informing him of what he had learned, that he had no recollection of writing to Coglin, but, as he knew they were jointly concerned in dealings in petroleum lands, he presumed Rhodes would-inform him.  " This was the only step the cashier took toward charging the prior parties.   They both did business at that bank: Coglin was a director; both were frequently there, and well known to the cashier.   As the mail required two days, and the 19th was Sunday, there was no question but the cashier

had until and including the 24th, to give notice to Rhodes and Coglin. After the receipt of the reply of the 20th, at noon, he took no steps, by post or telegraph, to ascertain from the Chicopee Bank, whether the acceptor had or had not been ready to pay on the 18th. The Philadelphia bank brought no suit against Rhodes or Coglin, but sued the Chicopee Bank for the amount of the note, on the ground that by its negligence, they had lost the power to charge the prior parties.

The court below instructed the jury, that the prior parties were absolutely discharged by what took place at the Chicopee Bank, on the 18th; that where a bill is accepted payable at a particular bank, the bank need not seek the acceptor, but that there must still be a presentment, in order to charge prior parties; that the presence of the bill at the bank, ready to be delivered to the acceptor upon his tendering payment, was equivalent to a presentment, but that if the bill is not at the bank on the day of payment, ready to be delivered as aforesaid, there is a failure of presentment, and the prior parties are discharged, although the acceptor made no attempt to pay; that in this case, therefore, the prior parties could not be held by any notice of whatever description, whenever or by whomsoever given; and that if the loss or mislaying of the bill during the whole of the 18th, was owing to the negligence of its cashier, the Chicopee Bank was liable for the amount of the note.

After the charge was fully delivered, the court was asked by the counsel of the Chicopee Bank, to instruct the jury as to the burden of proof. This the court refused to do, considering that it had already sufficiently instructed the jury.

The verdict and judgment were accordingly for the plaintiffs.

*R. H. Dana, Jr., for the Chicopee Bank, plaintiffs in error.*

The instructions given by the court cut off all inquiry whether the Philadelphia bank was not guilty of negligence, which discharged or contributed to discharge the prior parties. It is well-settled law, and was ruled by the court below,

that where a bill is sent to a bank for collection, and is dishonored, that bank may either itself give notice to the prior parties, or may send notice to the owner of the bill, and he may give notice to them. In the latter case, the owner is allowed the same time for notice from his agent, as is allowed between parties to negotiable paper. The Chicopee Bank had no means of giving notice to the prior parties, as it did not know their names or residence. As the 19th was Sunday, it was sufficient if the Philadelphia bank received notice on the 23d, and it had the 24th, in which to give notice to the prior parties. It made no attempt to learn from the Chicopee Bank, whether the acceptor was in default. If it had inquired, it could have learned the fact and given notice to the prior parties that the bill was not paid. This would have held the prior parties, unless the instruction of the court that nothing could hold them, is sustained to its fullest extent. If the notice actually given was not sufficient, the means of giving a full notice could have been obtained, by the use of reasonable diligence. There must, therefore, be a new trial, unless the prior parties were discharged, by law, on the 18th.

2. The ruling below rests rather upon a literal application of phrases used by courts and commentators, than upon reasons of commercial law, applicable to the particular case. Undoubtedly, where a bill is accepted payable generally, the holder is to be the actor, and must demand payment, presenting the bill. But where the acceptor promises to pay the bill at a certain bank, on a day certain, he is to be the actor, and must go to the bank and tender payment. If he does not tender payment, he is in default. If he does, and the bank is not ready to surrender the bill, he is not obliged to pay at that time, although he remains generally liable. Still, he may pay, even then, if the bank substitutes sufficient security. Now, some judges and commentators have used language of this sort. They say "that although a bill is accepted payable at a certain bank, still the bank must make presentment to the acceptor, and the only difference between that and a general acceptance, is that the presence of the bill

at the bank is equivalent to a presentment." Such language is not scientific. It leaves the impression that the bank is the actor, and has the first step to take, that is, to make the presentment, which is sufficiently made by having the bill in possession. It is natural to reason from this that if the bank has not the bill in possession, so as to be able to make presentment at any hour of the day when the acceptor may appear, there is a failure of presentment, whatever the acceptor may do or leave undone. In the present case, the acceptor was as much in default as an acceptor can be, yet the court below (apparently following the above course of reasoning), held that this was of no consequence, because the bank was not in condition to make presentment, that is, had not the bill so in hand as to be able to surrender it, if called for.

The actual obligations of the parties and the course of business show that this reasoning is not founded on principle. The duty of the acceptor is to become the actor. He must either have funds for the payment within the control of the cashier, or must call and tender payment in the course of the day. If he fails to do either without legal excuse, the prior parties can be held. If he tenders payment, and the bank has not the bill to surrender, he has a legal excuse for not paying on the day. This discharges the prior parties. But if he makes no attempt to pay, and the prior parties receive notice that the bill is not paid, is it just that the prior parties should defend themselves from making good to those to whom they have sold the bill, guaranteeing payment by the acceptor, by the fact that if he had tendered payment the bank could not have surrendered his bill? No case has been decided directly to that point, as is admitted on the other side, under like circumstances. It has been often said that the bank must have the bill ready to surrender. This means that it must do so, at its peril, in case tender is made. So, it has been said, that the presence of a bill is a presentment. This is only a technical compliance with a requirement technically raised. No actual presentment is necessary, and no substitute or equivalent for it is actually required.

Suppose the acceptor should send a written notice to the cashier that he should not pay a certain acceptance payable at the bank that day, would there be any act for the bank to do? Why, then, should not the notice of non-payment hold the prior parties? Such is the case here. The acceptor made no attempt to pay, had no suspicion that the bank had not the bill in hand, and testified that he intended not to pay it. Even if an acceptor at large, meeting the holder on the day, refuses to pay, without waiting for demand or presentment, it is a default.

There are several authorities which are founded on the recognition of the principle that if the acceptor is in default, the prior parties may be held on notice of non-payment, although the bill was not at the bank during the whole day, or any part of it, or was practically not there, that is, was not known to be there by the officers, provided the owner was not in default, or the prior parties were not in any way injured by the state of things.[*]

In these cases, the principle seems to be acknowledged that if the owner of the bill is in no default of getting it to the bank of payment, and the acceptor does not tender payment, and notice is given to the prior parties, they cannot excuse themselves from making good the guaranty which they gave to the person who purchased the note of them, by mere proof that the bill was not known to be in the bank by its officers, or was absent part of the day, or indeed was absent altogether, without the fault of the owner, and where such absence had no connection with the default of the acceptor, and does no injury to prior parties.

The truth is, that the word *presentment* is inappropriate to a case of acceptance payable at a certain time and place, as much as the word *demand*, and the use of the word has led

---

[*] Smith *v.* Rockwell, 2 Hill, 482; State Bank *v.* Napier, 6 Humphreys, 270; United States *v.* Smith, 11 Wheaton, 171; Merchants' Bank *v.* Elderkin, 25 New York, 178; Bank of United States *v.* Carneal, 2 Peters, 543; Whitwell *v.* Johnson, 17 Massachusetts, 450; Folger *v.* Chase, 18 Pickering, 63; Lockwood *v.* Crawford, 18 Connecticut, 368; Fullerton *v.* Bank of United States, 1 Peters, 604; Windham *v.* Norton, 22 Connecticut, 214.

to the following of false analogies and fallacious deductions. This court has now an opportunity to rectify the reasoning without positively overruling any case, and to place the subject upon the ground that if there is a positive refusal or default of the acceptor, and the owner is in no neglect as to having the bill at the place, and gives due notice of nonpayment, the prior party cannot defend if he suffers no injury.

3. But the instructions in this case are subject to a further serious objection. ᴠ They assumed that the bill was lost, or so mislaid that it could not be found, and treated it as if it was not at the bank at all. Now, it cannot be assumed as certain that if the acceptor had made a deposit to meet this bill, the cashier, not finding it in his mail of the 18th, would not, have telegraphed, made search in the bank, and found it. If the acceptor had called and tendered payment, and after search the bill was not found that day, it would, of course, have discharged the prior parties, but as he did not deposit or tender payment, the cashier was not put on inquiry. It can never be known whether, if the acceptor had taken the first step, which it was his duty to take, and which the prior parties had promised he would take, the bill might not have been found and surrendered. It may be said, therefore, that the ruling in some measure exempts the prior parties from making good their promise that the acceptor would deposit or tender payment, by the fact that he did not do as they promised.

4. The court refused to give instructions as to the *burden of proof*. By the *burden of proof* is not meant the preponderance of testimony, or a *primâ facie* case, or the obligation to prove this or that detail. It is the determination which way the law requires a jury in *equilibrio* to render its verdict. That is a pure question of law, as to which the jury cannot inform itself, and must be informed by the court. The instruction was not asked during the trial, but after the charge, and applied to the entire issue of negligence, the only issue submitted to the jury. There was an appreciable danger that the jury might think the defendants bound to clear themselves from the charge of negligence, the fact being

established that the bill had been put in the usual place by the postman. The defendant was therefore entitled to an instruction that they must take all the circumstances together, and find for the defendant, unless they were reasonably satisfied of his neglect, although they might not have a preponderance of belief in his favor, but be in what may be called *equilibrium.*

Mr. *George Putnam, contra.*

Mr. Justice NELSON delivered the opinion of the court.

The case was put to the jury, whether or not the loss of the bill, and consequent inability of the collection bank to take the proper steps against the acceptors to charge the prior parties, was attributable to negligence, and want of care on the part of the Chicopee Bank, and that, if it was, the bank was responsible. The jury found for the plaintiffs.

In cases where the drawee accepts the bill, generally, in order to charge the drawer or indorser, the holder must present the paper, when due, at his place of business, if he has one, if not, at his dwelling or residence, and demand payment; and, if the money is not paid, give due notice to the prior parties. If he accepts the bill, payable at a particular place, it must be presented at that place, and payment demanded. In these instances, as a general rule, the bill must be present when the demand is made, as in case of payment the acceptor is entitled to it as his voucher. When the bill is made payable at a bank, it has been held that the presence of the bill in the bank at maturity, with the fact that the acceptor had no funds there, or, if he had, were not to be applied to payment of the paper, constitute a sufficient presentment and demand; and, if the bill is the property of the bank, the presence of the paper there need not be proved, as the presumption of law is, that the paper was in the bank, and the burden rests upon the defendant to show that the acceptor called to pay it.*

---

* Chitty on Bills, p. 365 a, 353, Springfield ed. 1842; 1 Parsons on Notes and Bills, pp. 363, 421, 437; Byles on Bills, p. 251 and note; Fullerton *v.*

In the present case, it is argued that the bill was in the Chicopee Bank at the time of its maturity, and, as the acceptors had no funds there, a sufficient presentment and demand were made, according to the law merchant.  It is true the bill was there physically, but, within the sense of this law, it was no more present at the bank than if it had been lost in the street by the messenger on his way from the post-office to the bank, and had remained there at maturity; and this loss, which occasioned the failure to take the proper steps, or, rather, in the present case, to furnish the holder with the proper evidence of the dishonor of the paper, so as to charge the prior parties, and enable him to have recourse against them, is wholly attributable, according to the verdict of the jury, to the collecting bank.  In the eye of the law merchant there was no presentment or demand against the acceptors; and, as a consequence of this default, the holder has lost his remedy against the drawer and indorser, which entitles him to one against the defendant.  The radical vice in the defence being the failure to prove a presentment and demand upon the acceptors at the maturity of the bill, the question of notice is unimportant.

But, if it had been otherwise, the notice itself was utterly defective.  That relied on is the answer of the defendant to the telegram of the plaintiff of the 20th February, which was, that the bill had not yet been received.  This was after its maturity, and it simply advised the holder and payee indorser, to whom the information was communicated the same day, that the drawer and indorser were discharged from any liability on the paper.  It showed that the proper steps had not been taken against the acceptors to charge them.

Some criticism is made upon the refusal of the court below to charge, as to which side the burden of proof belonged, in respect to the question of negligence and want of care, after the paper came into the hands of the defendant.  No objection is taken to the charge itself, upon this question,

Bank of United States, 1 Peters, 604; Bank of United States *v.* Carneal, 2 Id. 543; Seneca Co Bank *v.* Neas, 5 Denio, 329; Bank *v.* Napier, 6 Humphry, 270; Folgar *v.* Chase, 18 Pickering, 63.

and, indeed, could not have been, as the point was submitted to the jury as favorably to 'the defendants as could have been asked.    We think the court, after having submitted fairly the evidence on both sides bearing upon the question, had a right, in the exercise of its discretion, to refuse the request.

If, however, the court had inclined to go further, and charge as to the burden of proof, it should have been that it belonged. to 'the defendant.    The loss of the bill by the bank carried with it the presumption of negligence and want of care; and, if it was capable of explanation, so as to rebut this presumption, the facts and circumstances were peculiarly in the possession of its officers, and the defendant was bound to furnish it.    Where a peculiar obligation is cast upon a person to take care of goods intrusted to his charge, if they are lost or damaged while in his custody, the presumption is that the loss-or damage was occasioned by his negligence, or want of care of himself or of his servants.    This presumption arises with respect to goods lost or injured, which have been deposited in a public inn, or which had been intrusted to a common carrier.    But the presumption may be rebutted.*

JUDGMENT AFFIRMED.

---

* Dawson *v.* Chamney, 5 Q. B. 164; Coggs *v.* Bernard, 2 Lord Raymond, 918; Day *v.* Riddle, 16 Vermont, 48; 1 Phillips on Evidence, Cowen's & Hill's Notes, p. 633.