J. M. ROBINSON, NORTON & CO. v. TUSCALOOSA MILLS.

(Circuit Court of Appeals, Fifth Circuit. January 3, 1911.)

No. 2,074.

1. EVIDENCE (§ 96*)—AFFIRMATIVE MATTER OF DEFENSE—BURDEN OF PROOF.
Where a plea admits the material averments of a complaint such as are essential to the cause of action, but accompanies the admission with a statement of the affirmative matter by way of defense, the burden of proving the matter so pleaded is on the defendant.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 119–121; Dec. Dig. § 96.*]

2. EVIDENCE (§ 96*) — CONTRACTS — BREACH — BUYER'S ACTION — BURDEN OF PROOF.
Where, in an action by a buyer to recover the price paid for goods sold and not delivered, defendant alleged that the goods were only to be shipped to plaintiff on orders, and that, when the time for delivery arrived, defendant advised plaintiff that the goods had been set aside and were being held subject to plaintiff's order, and while so held were destroyed by fire without defendant's fault, the burden of proving the affirmative of such plea was on the defendant.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 119–121; Dec. Dig. § 96.*]

3. SALES (§ 218½*)—FAILURE TO DELIVER—DESTRUCTION OF GOODS—QUESTION FOR JURY.
Where in a buyer's action to recover the price paid for goods sold, but not delivered, the seller claimed that the goods were only to be delivered on orders from the buyer, and that, when the time for delivery arrived, the goods were set apart, and the buyer informed that they were held subject to its order, and while being so held were destroyed by fire without the seller's fault, evidence to establish such plea *held* to require submission thereof to the jury.
[Ed. Note.—For other cases, see Sales, Cent. Dig. § 587; Dec. Dig. § 218½.*]

In Error to the Circuit Court of the United States for the Northern District of Alabama.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by J. M. Robinson, Norton & Co. against the Tuscaloosa Mills. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

This is an action for breach of a contract of sale, brought by the buyer, J. M. Robinson, Norton & Co., a New York corporation, against the seller, the Tuscaloosa Mills, an Alabama corporation. There was verdict and judgment for defendant, and plaintiff brings error. The first count of the complaint contains an allegation of the contract and the breach: "Plaintiff claims of defendant the sum of, to wit, thirty-three hundred and ten and 13/100 ($3,-310.13) dollars, with interest, for that plaintiff, to wit, on the 27th day of December, 1906, drew a check for the sum of thirty-three hundred and ten and 13/100 ($3,310.13) dollars on the American National Bank of Louisville, Ky., No. 13198, payable to the order of defendant, which said check was collected by defendant; that for and in consideration of said check defendant was to manufacture or deliver goods, wares, and merchandise to the amount of, to wit, the amount of said check, for the account of plaintiff, to be shipped to plaintiff or plaintiff's order as plaintiff should select and order same; that said defendant has failed and refused, and continues to fail and refuse, to manufacture or ship said goods, wares, and merchandise to plaintiff or plaintiff's order, as aforesaid, and has failed and refused, and continues to fail and refuse, to return to plaintiff the money collected on said check, as aforesaid, wherefore plaintiff brings this suit."

The defense relied on is elaborately stated in the following plea: "That on, to wit, the 3d day of February, 1906, the defendant was engaged in the business of manufacturing cotton goods, known as outings, at its cotton mill at Cottondale, Ala., and the plaintiff was a mercantile corporation doing a wholesale dry goods business at Louisville, in the state of Kentucky. That on said 3d day of February, 1906, defendant's traveling salesman made with the plaintiff a contract whereby the defendant contracted to sell to the plaintiff a lot, to wit, one hundred (100) cases of cotton goods, known as outings, at its said mill at Cottondale, Ala. That the $3,310.13 paid by the plaintiff to the defendant, as averred in the first count of the complaint, was paid under and in pursuance of the said contract entered into between the plaintiff and the defendant on, to wit, the 3d day of February, 1906, as aforesaid, whereby plaintiff agreed to purchase from the defendant, and the defendant agreed to sell to the plaintiff, the said 100 cases of outings. That, according to the terms of said contract, defendant was to ship to plaintiff from its said mill at Cottondale twenty-six (26) cases of said goods in the month of July, 1906, and to hold the balance of said goods for instructions from the plaintiff up to the 1st day of December, 1906, and to deliver to plaintiff on December 1, 1906, all of the said goods not delivered prior to that time, at which time the plaintiff should take and pay for such balance of goods as had not been delivered up to that time. And the defendant avers: That, in pursuance of the terms of said contract, it shipped to the plaintiff on orders from it, in and prior to the month of July, 1906, 26 cases of said goods, and at various other times prior to the 1st day of December, 1906, shipped to the plaintiff, or to such of the plaintiff's customers as the plaintiff designated to the defendant, various different quantities of said goods, amounting in the whole to fifty-three (53) cases, for all of which the plaintiff paid the defendant according to said contract. That on the 1st day of December, 1906, there remained of the one hundred cases of goods covered by said contract twenty-one (21) cases which had not been delivered. That the defendant on, to wit, the 15th day of December, 1906, separated from its other goods, and laid aside by themselves separate and apart from any other goods in defendant's warehouse at Cottondale, in Tuscaloosa county, Ala., where said goods were manufactured, and at the point from which they were to be shipped, the 21 cases of goods remaining undelivered on said contract of February 3, 1906, of exactly the same kind, quality, and description called for by said contract and then undelivered, and appropriated them to the supplying and completion of the goods then due plaintiff under said contract, and made out and rendered to plaintiff an invoice or bill of said goods, and wrote plaintiff a letter inclosing said invoice or bill, informing plaintiff that said goods were held

in defendant's warehouse subject to plaintiff's order. That upon receipt of said invoice and letter from defendant plaintiff, in reply thereto, sent defendant a check for the $3,310.13 mentioned in the several counts of the complaint in payment for said goods, and the defendant avers that from the time said goods were laid aside and set apart as aforesaid they remained in the defendant's warehouse at its mill in Cottondale, in a pile by themselves, separate and apart from any other property belonging to defendant or any one else, until, to wit, the 13th day of August, 1907, when, without fault on the part of the defendant, said goods were destroyed by fire." There were several other counts in the complaint, and numerous pleas, but, in view of the facts developed on the trial and the questions to be considered here, they are not material.

The plaintiff offered in evidence the order for goods, which, with its acceptance, constituted the contract. The order was dated February 3, 1906, and was for "100 cases of Caledonian outings," describing the assortments, and directing the defendant to ship part of the goods in July and to "hold balance for instructions." The order authorized the seller to charge to the buyer "such goods required to complete order December 1st." The order clearly meant, as construed by both parties, that after making the July shipment the other cases were to be shipped as ordered, and that, if directions for the shipment of all the goods were not given by the buyer before December 1st, the cases not ordered out could be charged by the seller to the buyer. The plaintiff offered evidence to show that he had not directed the shipment of, nor actually received, 21 cases of the goods embraced in the contract. Seventy-nine cases had been received or shipped on the buyer's order, and paid for. The controversy is confined to the 21 cases. The plaintiff's evidence showed that it had received a bill for the undelivered 21 cases, and that a check for $3,310.13 had been sent to the sellers to pay for them. This check, payable to and indorsed by the Tuscaloosa Mills, was offered in evidence, together with some letters that will be referred to later. The plaintiff then rested.

The defendant's evidence did not conflict with that offered by the plaintiff as to the original contract and its part performance. The defendant, however, offered testimony to show that the 21 cases of goods were manufactured, marked, and set aside for the plaintiff separate from defendant's other goods on December 15, 1906, that notice was given plaintiff that they were held subject to its order, and that the goods, without fault of the defendant, were destroyed by fire on the 13th day of August, 1907. The defendant's evidence tended to show that the invoice sent plaintiff was indorsed that the goods were held subject to plaintiff's order, and that a letter accompanied the invoice to the same effect. The receipt of the letter and the invoice so indorsed was denied by the plaintiff, but it was admitted that the bill for the 21 cases was received, and that the check was sent to pay the bill. The contract and the evidence show that the goods had to be paid for within the year 1906 to obtain a discount of 3 per centum, which was, in fact, allowed. The correspondence between the parties to which we have referred is as follows:

On July 23, 1907, plaintiff wrote to the defendant: "We will appreciate it very much if you will send us sample cards of outing flannels. You know you have charged up to us about twenty cases of these goods, and we want to give you selections for the same." On July 24, 1907, defendant replied: "We have been waiting to hear from you in regard to the goods we have charged up to you. We think it would be best for both of us if you would send direct orders for goods to be shipped to your customers. We can give you nice assortments and know they will please you. This will enable us to give you more prompt deliveries." On August 8, 1907, plaintiff wrote to the defendant: "It was our pleasure a few days ago to receive a letter from you in answer to ours as regards samples of outing flannels you were going to send us to select from. Our fall trade is on us and we are needing these outing flannels, so we will appreciate it if you will send us these samples at once. Let us hear from you by return mail at once and oblige." On August 10, 1907, defendant wrote to the plaintiff: "Yours of the 8th received. We are sending you to-day by express one set of sample outing flannels. Kindly make

your selection and give us the privilege of substituting on what we have not in stock." On August 13, 1907, plaintiff wrote to the defendant: "Yours of Aug. 10th, also sample cards that it was your pleasure to send us, is at hand and contents noted. Kindly ship us two (2) cases each 69–55–67–118–66–97–49–96–44–43 and one (1) case 75. Let it come out under our ticket mill No. 3. If you have not just these styles and have something near them, substitute." On the night of August 13, 1907, as before stated, the defendant's cotton mills were burned, including the goods which are claimed to have been manufactured for plaintiff.

The charge of the learned trial judge contains a clear and able presentation of the facts bearing on the pivotal question to be decided by the jury. It contained no reference to the subject of the burden of proof. At the conclusion of the court's charge the following special charge was given at the request of the defendant: "The burden is on the plaintiff to make out its case to the reasonable satisfaction of the jury, and, in order to do this, it must show to the reasonable satisfaction of the jury that the defendant did not deliver the 21 cases of goods for the price of which the plaintiff is suing."

The plaintiff requested the following special charges, which were refused:

"(1) If the jury believe the evidence, they must find for the plaintiff.

"(2) The burden of proof is on the defendant to show that the defendant gave the plaintiff notice of any separation of said goods and setting them apart for the plaintiff.

"(3) I charge you that the burden of proof is on the defendant to show to your reasonable satisfaction that said goods were separated and set aside, and were of the kind and quality ordered."

The plaintiff reserved exceptions separately to the giving and refusing to give these charges, and the ruling of the court is assigned as error.

John W. Tomlinson and Roy McCullough (J. R. Duffin and M. T. Ormond, of counsel and on the brief), for plaintiff in error.

Henry A. Jones (Jones & Penick, on the brief), for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and TOULMIN, District Judge.

SHELBY, Circuit Judge (after stating the facts as above). Many general rules have been announced on the subject of the burden of proof, intending to show on whom it lies. It is often announced that the burden is on the plaintiff, and, again, that it is on the party having the affirmative allegation. But an examination of the precedents will show that the burden is often on the defendant; and sometimes on one who has a negative assertion to prove. It may be truly said that the burden is on one to whose case the fact to be proved is essential, but that serves no purpose as a general rule, for it merely presents another question. It seems clear that there can be no general rule for all cases. In the courts it must always remain a question of policy and fairness based on experience in different situations. The solution of the question in each case must depend on its own pleadings and facts. Cases occur where, on the pleadings, no evidence being offered on either side, the plaintiff is entitled to judgment. Such is the case where the plea admits the material averments of the complaint, such as are essential to the cause of action, but accompanies the admission with a statement of affirmative matter by way of defense. In such case the burden of proving the new matter set up as a defense is, of course, upon the defendant. Proof of it is essential to his defense, and, neither side offering evidence, judg-

ment on the pleadings should be entered for the plaintiff. Cook v. Guirkin, 119 N. C. 13, 25 S. E. 715. In the instant case, however, the plaintiff did not rest on the pleadings, and probably thought it not prudent to do so, as pleas other than the one containing the admissions had been filed.

The plaintiff sues for $3,310.13, alleging that it paid that sum to the defendant for goods which the defendant was to manufacture and deliver to the plaintiff, and that the defendant failed to deliver the goods, and refuses to return the money. The plea that states the defendant's only defense, as shown by the evidence offered, admits the receipt of the money, admits the agreement to manufacture and deliver goods for the money, and admits that the money has not been returned. These admissions are coupled with the affirmative defense that the goods were manufactured, set aside for the plaintiff, notice of the fact given plaintiff, and that subsequently, without defendant's fault, the goods were destroyed by fire.

The real issue to be tried was the truth of the defensive statements in this plea. The plaintiff was in business in Kentucky. The defendant's warehouse, where it claimed the goods were set aside and destroyed by fire, was in Alabama. The facts pleaded, if they existed, were clearly within the knowledge of the defendant and easily susceptible of proof by it; but it would not be practicable, if possible, for the plaintiff to prove the negative—that the goods were not set aside in performance of the contract. Proof of a fact, which, if true, rests within the knowledge of the defendant, and which it might be impossible for the plaintiff to prove, "lay upon defendant." Borthwick v. Carruthers, 1 T. R. 648; Stewart v. Ashley, 34 Mich 183. Putting aside the suggestion that the plea admits the negative averment of the complaint—that the defendant had not actually delivered to the plaintiff the goods for which the check was given—it seems that under the circumstances the burden would not be on the plaintiff to prove the negative averment. In United States v. Denver & R. G. R. R. Company, 191 U. S. 84, 92, 24 Sup. Ct. 33, 35, 48 L. Ed. 106, the court said:

"When a negative is averred in pleading, or plaintiff's case depends upon the establishment of a negative, and the means of proving the fact are equally within the control of each party, then the burden of proof is upon the party averring the negative; but when the opposite party must from the nature of the case himself be in possession of full and plenary proof to disprove the negative averment, and the other party is not in possession of such proof, then it is manifestly just and reasonable that the party which is in possession of the proof should be required to adduce it. or, upon his failure to do so, we must presume it does not exist, which of itself establishes a negative."

When, with admissions made by the defendant, evidence offered by the plaintiff makes a prima facie case, the plaintiff may rest, and the burden is on the defendant to prove an affirmative defense. Lilienthal's Tobacco v. United States, 97 U. S. 237, 266, 24 L. Ed. 901.

The case turns on the question of the ownership of the 21 cases of goods when they were burned. Their loss must fall on the owner. The ownership depends on the issue as to whether or not they were marked and set aside for the plaintiff in performance of the agreement,

of which notice was given the plaintiff, and to which it impliedly assented. Evidence was offered by the defendant tending to sustain its contention on this issue. The plaintiff, on the contrary, offers evidence tending to show that it received no notice; and it relies on the correspondence as showing that up to a few days before the fire neither party considered that the 21 cases had been selected and applied to the contract, and that the defendant did not claim to have selected and appropriated any particular goods to the settlement of the contract of purchase. We do not wish to intimate any opinion upon the weight of the evidence further than to say that on the record before us the correspondence, explanations of it, and the other evidence presented a question for the jury. On this issue the burden of proof was on the defendant. This is so for three reasons: (a) The defendant makes the affirmative defensive allegation; (b) it relates to a matter especially within the defendant's knowledge, the proof of which was necessary and essential to the defendant's defense; and (c) the plaintiff had made proof of a prima facie case, which, if not admitted by the pleadings, was undisputed by the evidence, excepting, of course, the evidence offered in support of the new matter pleaded.

In Chicopee Bank v. Philadelphia Bank, 75 U. S. 641, 19 L. Ed. 422, Mr. Justice Nelson observed in commenting upon the refusal of the court below to charge as to which side the burden of proof belonged:

"We think the court, after having submitted fairly the evidence on both sides bearing upon the question, had a right, in the exercise of its discretion, to refuse the request."

The opinion shows, however, that if the request had been granted —which was merely to instruct on the question of the burden of proof —the court should have instructed that the burden was on the party making the request. He was, therefore, not injured, but benefited, by the refusal. That case is entirely different from the case at bar. It may be that in the instant case the court, having fairly submitted the issue to the jury, would have been acting within its discretionary power if it had refused to charge on the subject of the burden of proof, although generally the jury should be instructed on that subject, and it has been held that it is error to refuse on request to give a proper charge as to the burden of proof. Stevens v. Pendleton, 94 Mich. 405, 411, 53 N. W. 1108.

But the defendant was not content with the silence of the court on the subject, and, at its request, the jury were charged that the burden was on the plaintiff to prove to the reasonable satisfaction of the jury "that the defendant did not deliver the 21 cases of goods for the price of which the plaintiff is suing." And the court refused to charge, at the request of the plaintiff, that the burden of proof was on the defendant to show that the goods were separated and set aside. These charges were not asked, nor would they be understood by the jury to apply to the prima facie case made by the plaintiff. That was undisputed, except by the evidence offered in support of the new matter pleaded. The charges would be understood as applying to the defensive averments of the plea.

We are of opinion that the giving of the defendant's requested charge and the refusal of the charge asked by the plaintiff was error, in view of the pleadings and the evidence on which the issue was submitted to the jury.

The judgment is reversed, and the cause remanded for a new trial.